**In re Dianna K. ROBINSON, Debtor.**

**Dianna K. Robinson, Appellant,**

**v.**

**Eric Sanchez; Rack Brown; Scott P. Kirtley, Trustee; and United States Trustee, Appellees.**

**BAP No. NO–03–003.**
**Bankruptcy No. 02–04035–M.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 11, 2003.

Submitted on the briefs: *

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

F. Bennett Callicoat and John B. Jarboe, Jarboe & Stoermer, P.C., Tulsa, Oklahoma, for Appellant.

Rita A. Foster, Rita A. Foster, P.C., Tulsa, Oklahoma, for Eric Sanchez and Rack Brown.

Before McFEELEY, Chief Judge, BOULDEN, and NUGENT, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

Dianna K. Robinson ("Appellant") appeals from the bankruptcy court's order sustaining the judgment creditors' objection to her homestead exemption claimed under Oklahoma law, and denying Appellant's motion to avoid the judgment lien against the homestead. The bankruptcy court concluded that Appellant's purported homestead was not her principal residence as of the commencement of the case. The bankruptcy court found that Appellant's overnight stay at the property on the eve of filing did not demonstrate sufficient intent to make the property her principal residence. For the reasons stated below, we AFFIRM.

### Appellate Jurisdiction

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The Appellant timely filed her notice of appeal from the bankruptcy court's final order, and the parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the Northern District of Oklahoma.[1]

### Standard of Review

 We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.[2] This appeal implicates both standards. We defer to the bankruptcy judge's findings of fact with respect to the existence of the homestead unless they are clearly erroneous.[3] We review the bankruptcy court's interpretation and application of Oklahoma's homestead exemption to the facts de novo.[4] Appellant chiefly complains that the bankruptcy court erroneously applied Oklahoma law in denying Appellant's claimed homestead exemption.

### Statement of Facts

The Appellant owns real property and a house located on West 41st Street in Tulsa, Oklahoma (the "Property"). Appellant's father lived in the Property until his death in 1999. The Property was vacant from 1999 until April 2001, when it was occupied by tenants. The tenants lived in the Property for approximately one year. The Property again stood vacant until late June of 2002, when Appellant's son and daughter-in-law moved into the house on the Property. During this time, the Appellant resided elsewhere in Tulsa in rented property at 4839 S. 30th W. Avenue ("Rented Property").

The Appellees own and live on property adjacent to the Property.[5] The record is

---

1. 28 U.S.C. § 158(a)(1) and (c)(1); Fed. R. Bankr.P. 8002.

2. *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

3. Fed. R. Bankr.P. 8013; *In re Miniscribe Corp.,* 309 F.3d 1234, 1240 (10th Cir.2002) (A finding of fact is "clearly erroneous" if, after reviewing all of the evidence, this Court is left with the definite and firm conviction that a mistake has been made.).

4. *In re Kretzinger,* 103 F.3d 943, 946 (10th Cir.1996) (construing and applying Oklahoma homestead exemption).

5. Appellees have resided at their property since 1999.

clear that after Appellant's father died, the Property fell into serious disrepair. The evidence presented at trial also established that the Property continued to deteriorate during the tenants' occupancy, due not only to the tenants' neglect of maintenance, but also to their affirmatively destructive activities.[6] When the tenants made threats against Appellees, the Appellees installed a 24–hour computer-based digital video surveillance system on their own property to monitor the exterior of the Property and the tenants' activities. Using this surveillance system, the Appellees were able to collect and catalog images and create surveillance logs from March 2002 forward.

This neighbor dispute culminated in the Appellees' commencement of a state court lawsuit against Appellant. On June 3, 2002, a default judgment was entered against Appellant for emotional distress and damage to property totaling $24,200.46. The Appellees filed their state court judgment causing their judgment to become a lien upon the Property. The record before this Court shows that the judgment and judgment lien were personally served upon Appellant on June 11, 2002, at the Rented Property.

The Appellees testified that Appellant first spent the night at the Property on August 18, 2002 and August 19, 2002.[7] Appellees testified that otherwise, Appellant was previously observed at the Property on only two occasions: March 19, 2002 and April 3, 2002. Appellant's presence at the Property was corroborated by the surveillance videos. On June 26, 2002, Appellant's son and daughter-in-law began moving *the son's* furniture into the house. It is undisputed that Appellant was not present at the property on June 26 during this movement of furniture. The bankruptcy court found that there was no evidence presented by Appellant, apart from her uncorroborated testimony, that she actually occupied or resided at the Property at any time before August 18, 2002.

On August 20, 2002, Appellant filed her Chapter 7 case. Appellant claimed the Property exempt as her homestead. The Appellees and trustee timely objected to the claimed homestead exemption and a hearing was held on December 10, 2002.[8]

In addition to the testimony of Appellant and Appellees, surveillance images of the Property were introduced and admitted into evidence at the hearing.[9] Although there were numerous references to Appel-

---

**6.** The Appellees described debris, trash, old appliances, inoperable vehicles, and lumber that the tenants permitted to accumulate, as well as an inoperable septic system. In April 2002 the Appellant was cited by the Tulsa Health Department for violations concerning the Property.

**7.** Appellee Brown testified that Appellant carried a "little bag" into the house for the stay but that Appellant was wearing a pink outfit on both days.

**8.** The Chapter 7 trustee objected to Appellant's claimed homestead exemption but did not appear or participate in the evidentiary hearing before the bankruptcy court. The trustee has adopted and joined in the Brief of Appellees for this appeal.

**9.** A compact disc containing certain surveillance video files (CD/DVD, *in* Appellant's App. at 93) is included in the record on appeal. As indicated by the foundation witness, it contains video files of certain events since March 2002, specifically video images from March 19, March 29, April 6 and 7, June 26, July 22, and August 18, 19, and 20. However, at trial only video files from June 26 were offered and shown. The bankruptcy court only admitted into evidence the video images from June 26 shown at trial. *See* Hearing Tr. at 47–48, *in* Appellant's First Supplemental App. at 47–48. We may only consider the images that were admitted into evidence by the bankruptcy court.

lant's testimony in a Rule 2004 examination during the proceedings before the bankruptcy court, a transcript of the 2004 examination has not been included in the record on appeal.

Appellant testified at the hearing that she had lived in the Property since May or June 2002; this testimony was refuted by both the testimony of Appellees and the surveillance videos. Appellant also testified that she "visited" or spent two to three weeks each month of June, July and August at the Property, but her alleged presence was not corroborated and in fact was contradicted by Appellees' testimony and the surveillance logs. Appellant further claimed that she had last resided at the Rented Property through the end of May or first of June; this was refuted by Appellees' personal service of the judgment lien upon Appellant at the Rented Property on June 11, 2002.

In addition, there is further credible evidence in the record to support the following additional facts and rebut Appellant's claimed intent to make the Property her homestead: the electrical service to the Property was in the name of Appellant's son and none of Appellant's furnishings were moved into the house on the Property.[10] There was no evidence that Appellant had *ever* moved her personal belongings and effects into the Property.

Appellant was cited by local health department authorities in April 2002 for maintaining an open septic system and it remained open at the time of Appellant's bankruptcy filing in August. In addition,

Appellant failed to pay the real estate taxes for 2002 on the Property. Finally, Appellant did not file an application for homestead exemption on the Property with the county assessor until after she filed bankruptcy.

In addition to the discredited testimony of Appellant, and even more telling to this Court is the lack of affirmative evidence presented by Appellant in support of the exemption. Appellant testified that after her father's death she attempted to obtain a bank loan to make repairs to the Property but she was not approved. However, Appellant did not offer any evidence to corroborate her claim.

Similarly, in an attempt to explain her lengthy absence from the Property, Appellant testified that she spent substantial time visiting her daughter out-of-state in the summer of 2002. Yet Appellant did not attempt to quantify the dates or length of her visits. Nor did Appellant's daughter testify to corroborate Appellant's testimony.

Appellant claimed to have terminated her lease on the Rented Property but could not credibly identify a date certain and did not produce the landlord to verify that she had terminated the lease and vacated the rental property.[11]

It appears that Appellant's son and daughter-in-law have occupied the Property since late June 2002. However, neither the son nor the daughter-in-law testified at the hearing to explain their arrangement or understanding with the Appellant con-

---

**10.** Appellant testified that she had given all of her furnishings to her grandson and family.

**11.** The evidence presented concerning the alleged termination of phone service at the Rented Property is confusing and unclear. This Court's review of this testimony is hampered by the fact that the purported phone bill or record produced at trial by the Appel-

lees was never marked as an exhibit or admitted into evidence and is not part of the record on appeal. This evidence, however, is unnecessary and will be disregarded by this Court as there is other substantial, competent evidence to support the bankruptcy court's determination of Appellant's intent.

cerning her occupancy or her intentions with regard to the Property.

Finally, the Appellant claims to have cleaned and refurbished the house during the summer of 2002, but no photographs or bills evidencing the cost of repairs were produced to corroborate this claim. Nor did Appellant identify the party who made the repairs or provide evidence of payment. On further examination, Appellant stated that the repairs had been done only to the interior of the house and significant repairs remained to be completed on the exterior of the house. The exterior repairs included painting, replacing broken windows, and repairing the roof. Other repairs, the Appellant conceded, were made after the bankruptcy filing.

The bankruptcy court issued its Memorandum Opinion and Judgment on December 31, 2002, sustaining the objections to Appellant's homestead exemption. In his Opinion, the bankruptcy judge correctly stated that exemptions are determined as of the date of the filing of the bankruptcy petition but went on to state that in determining the validity of a claimed homestead exemption under Oklahoma law:

> ... [the court] "is not confined to a 'snapshot' of the Debtor's actions in the instant prior to the filing of the bankruptcy case" as it determines the validity of a claimed exemption. *See In re Klaus,* 228 B.R. at 478. It is well within the purview of the Court to consider Debtor's conduct prior to August 19[sic],

2002, as it reaches its conclusion as to whether Debtor had the necessary intent to claim the Subject Property as her homestead.[12]

It is from this legal conclusion that the Appellant appeals.

## Analysis

■ In deciding this appeal, this Court is mindful of the parties' respective burdens when a claimed exemption is contested. The Appellant's claimed homestead exemption is presumed to be valid, and the objecting judgment creditors ("Appellees") bear the initial burden of producing evidence to rebut the presumption. Thereafter, the burden shifted back to Appellant to come forward with evidence to demonstrate that the claimed exemption was proper.[13] Based upon this Court's careful review of the entire record, we agree with the bankruptcy court that the Appellees carried their burden of rebutting the Appellant's claimed homestead exemption and, even applying a liberal construction of exemption laws, the Appellant failed to meet her ultimate burden of demonstrating a right to the claimed exemption under Oklahoma law.[14]

The bankruptcy court largely discredited the Appellant's unsubstantiated testimony. We are loathe to disturb factual findings where those facts turn largely on the credibility of witnesses because the bankruptcy court is in the best position to judge the credibility of the witnesses.[15]

---

12. Mem. Op. at 7, *in* Appellant's App. at 88. The bankruptcy court erroneously stated that Appellant commenced her bankruptcy on August 19. It is uncontested that the petition was *filed* on August 20. However, the bankruptcy court's misstatement concerning the date of bankruptcy filing is harmless error.

13. Fed. R. Bankr.P. 4003(c); *In re Gregory,* 245 B.R. 171, 174 (10th Cir. BAP 2000), *aff'd without opinion,* 246 F.3d 681, 2000 WL 1809081 (10th Cir.2000). *See also* 11 U.S.C. § 522(*l*).

14. *See, e.g., In re Reid,* 757 F.2d 230 (10th Cir.1985); *Phelan v. Lacey,* 51 Okla. 393, 151 P. 1070, 1071 (1915) (Oklahoma exemption laws are to be liberally construed).

15. *See* Fed. R. Bankr.P. 8013. The fact that the bankruptcy court may have rejected Appellant's testimony as not credible is not a basis for setting aside factual findings, partic-

The Appellant's loud complaint about the bankruptcy court's erroneous recitation of the date of the bankruptcy filing is unavailing. That the bankruptcy court misstated the filing date by one day is no reason for reversal, particularly where the actual filing date is apparent from the court file. The bankruptcy court correctly recognized that the bankruptcy petition date is the appropriate date on which to determine exemptions.[16]

The Appellant also challenges on appeal the testimony of Appellees concerning Appellant's overnight stay on August 18, 2002. The Appellees testified that they saw Appellant enter the house on August 18, 2002, wearing a pink outfit and leave the following morning dressed in the same clothes. The Appellant did not attempt to dispute this evidence at trial. Instead, the Appellant waited until this appeal to argue that the surveillance video files for August 18 and August 19, 2002, refute this testimony. Unfortunately, the Appellant did not bring this to the attention of the bankruptcy court at trial. Moreover, the video files for August 18 and August 19, 2002, contained on the compact disc (CD/DVD, *in* Appellant's App. at 93), were not offered or admitted into evidence in the proceedings below, and therefore, are not properly part of the record on appeal.[17] The salient fact is that Appellant's first actual occupancy of the Property occurred on August 18, 2002, immediately prior to

her filing bankruptcy, not which clothing Appellant was wearing on that date. We find nothing clearly erroneous in the bankruptcy court's findings of fact.

This leaves the issue of the bankruptcy court's application of the Oklahoma homestead exemption to the facts of this case, an issue we review de novo. The Court believes that this case presents the question of *establishing* a homestead, where there has not been a period of actual occupancy prior to bankruptcy. The Appellant does not assert that the Property had been her principal residence for some time period prior to bankruptcy. Nor does the Appellant state when she first established this Property as her homestead.[18]

Oklahoma's statutory homestead exemption reads:

A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

1. The home of such person, provided that such home is the *principal residence* of such person;[19]

Thus, the question presented here is whether the Property was Appellant's principal residence on the bankruptcy petition date.[20]

ularly where that testimony was largely uncorroborated by other evidence. *See In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987) abrogated on other grounds by *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 440, 133 L.Ed.2d 351 (1995).

16. *See* p. 152, *supra.*

17. *See* note 9 *supra.*

18. The Appellees' brief addressing *abandonment* of the homestead does not properly address the issues on appeal. There is no

evidence in the record that Appellant had previously established the Property as her principal residence. Appellant suggests in her brief that the Property was first established as her homestead, at the earliest, on August 18, 2002.

19. OKLA. STAT. ANN. tit. 31, § 1(A)(1) (West 1991 & Supp.2000) (Emphasis added.).

20. *Mansell v. Carroll,* 379 F.2d 682, 684 (10th Cir.1967). *See also, In re Lampe,* 278 B.R. 205, 210 (10th Cir. BAP 2002); *In re Klaus,* 228 B.R. 475, 478 (Bankr.N.D.Okla.1999).

■ Oklahoma case law firmly establishes two requirements to impress property with a homestead character.

> First, there must be a fixed intention to make a home on the property evidenced by overt acts of preparation in the erection of improvements and in the preparation of the land for a home; and, second, the actual occupancy of the land, or an attempt in good faith to do so, must follow the overt act of preparation without unreasonable delay.[21]

Speaking to the intent requirement, the Oklahoma Supreme Court has stated:

> The intention of the parties may be evidenced either by expressions of intention, or by acts which indicate intention. At time expressions of intention and acts which indicate intention are in harmony with each other, but at other times they are at variance. When the latter case is presented, the positive acts of the parties are more indicative of their real intentions than mere expressions, particularly when such acts are of a continuing nature and are more consistent with the attitude of the normal person under the same circumstances.[22]

■ It can be fairly concluded under Oklahoma law that in a situation where there has not been actual occupancy and the court is required to determine a party's intent to establish a homestead, that intent cannot be ascertained by a single point in time. The Oklahoma courts examine a party's acts and conduct prior to actual occupancy to ascertain whether an intention to make the property one's principal residence is present.

An Oklahoma bankruptcy court concluded in *In re Winegarten*:

> The Debtors in the instant case have expressed an intention to consider the land and home located thereon as homestead and reside there permanently. However, "this intention should not only be in the minds of the party, but should be evidenced by some unmistakable acts, showing the intention to carry out such a design." *Jefferson, et al. v. Henderson, et al.,* 140 Okl. 86, 282 P. 677 (1929). *The past actions of the Debtors have not so indicated. ... The Debtors' outward representations "to the world" do not manifest their intent to claim the subject property as homestead prior to this bankruptcy.*[23]

These conclusions are equally applicable to Appellant in the case at bar.

■ The bankruptcy court correctly concluded that the determination of a debtor's intent to designate a homestead under Oklahoma law requires more than a "snapshot" taken at the date of filing.[24] Both Appellant's intent to reside in the Property and her good faith actual occupancy were necessary, but never shown. The Appellant's first occupancy of the Property on the eve of filing bankruptcy is highly suspect. Indeed, this is a case where the Appellant's acts and conduct in the months leading up to her first actual occupancy contradict her declarations and speak loudly of her true intent at the time of the bankruptcy petition.[25] We think

---

21. *Enosburg Falls Savings Bank & Trust Co. v. McKinney,* 172 Okla. 298, 44 P.2d 987, 989 (1935). *See also, Preston v. Ottawa County Nat'l Bank,* 138 Okla. 133, 280 P. 581, 583 (1929); *In re Jones,* 107 B.R. 350, 351–52 (Bankr.E.D.Okla.1989).

22. *Enosburg Falls Savings Bank & Trust Co., supra* at 989.

23. 101 B.R. 705, 707–08 (Bankr.E.D.Okla. 1989) (Emphasis added.).

24. *See In re Klaus,* 228 B.R. at 478.

25. *Cf. McFarland v. Coyle,* 69 Okla. 248, 172 P. 67 (1918).

there is ample evidence of Appellant's conduct and actions in the five short months prior to bankruptcy bearing on her intent to support the bankruptcy court's findings. Appellant's actions and conduct belie her claimed intent to make the Property her principal residence as of August 20, 2002.

The bankruptcy court correctly applied Oklahoma's homestead exemption to the facts of this case. The Appellees carried their burden of proving that Appellant did not intend, as of the date of the bankruptcy petition, to make the Property her principal residence. We therefore AFFIRM.