**In re Ricky Alan WILLCUT, formerly doing business as Willcut Properties, LLC, formerly doing business as Horner Development, LLC, formerly doing business as Debonaire Farms LLC, and Terri Ann Willcut, Debtors.**

**Steven W. Soulé, Trustee, Appellant,**

**v.**

**Ricky Alan Willcut, Terri Ann Willcut, ONB Bank and Trust Company, and United States Trustee, Appellees.**

BAP No. NO–11–023.
Bankruptcy No. 10–12802.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

May 29, 2012.

Submitted on the briefs: *

Steven W. Soulé, pro se (Jean Carlos López of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, with him on the brief).

Todd Maxwell Henshaw of James, Potts & Wulfers, Inc., Tulsa, OK, for Appellees Ricky Alan Willcut and Terri Ann Willcut.

Before NUGENT, KARLIN, and ROMERO, Bankruptcy Judges.

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed.

KARLIN, Bankruptcy Judge.

This appeal is from a bankruptcy court order overruling the Trustee's objection to the Debtors' homestead exemption under 11 U.S.C. § 522(*o* )(4). Under § 522, a debtor can exempt certain property and protect that property from execution by a bankruptcy trustee. Section 522(*o* )(4) limits the homestead exemption to the extent of any value attributable to fraudulent conversion of nonexempt assets within ten years of filing bankruptcy. The statute reads:

> [T]he value of an interest in ... real or personal property that the debtor ... claims as a homestead ... shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (pb), if on such date the debtor had held the property so disposed of.[1]

The central issue in this appeal is the definition of the phrase "value of an interest in ... real [ ] property."

We affirm the order overruling the Trustee's objection because we, like the bankruptcy court, interpret the phrase "value of an interest in ... real [ ] property" as the measure of the increase in monetary value of the economic interest in real property claimed as a homestead due to a fraudulent transfer of non-exempt funds into the property, rather than a title interpretation of the word "interest."

R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

**1.** 11 U.S.C. § 522(*o* )(4).

## I. Background Facts and Procedural History

In August, 2010, Appellee/Debtors Ricky Alan Willcut and Terri Ann Willcut (the "Debtors") filed a Chapter 7 bankruptcy petition, claiming their home as exempt under Oklahoma's homestead exemption.[2] They valued their home at $600,000 in their schedules, and noted it was encumbered by a $415,000 secured claim. The Debtors' petition also disclosed that they sold some items of real and personal property at auction prior to bankruptcy.

The Trustee filed an objection to the Debtors' claim of exemption, arguing that it should be reduced pursuant to § 522(o)(4). The Trustee alleged the Debtors had applied approximately $100,000 received as proceeds from the auction of non-exempt property toward the purchase of the home, and that the conversion of non-exempt assets to exempt assets was an attempt by Debtors to defraud their creditors.

After an evidentiary hearing, the bankruptcy court overruled the Trustee's objection to exemption. The bankruptcy court found: (1) the home had a fair market value of $425,000;[3] (2) the scheduled valuation by Debtors of $600,000 for the property should be given no weight;[4] and (3) there was "no realizable equity in the [home]"[5] in light of the $415,000 mortgage on the property.[6] The bankruptcy court then concluded that "in order for a party to prevail on an objection to exemption under Section 522(o)[,] the party must prove by a preponderance of the evidence that the debtor has equity ..., an economic interest that, if liquidated, would result in the generation of funds in excess of the amount of debt secured by liens upon the property."[7] Because there was no equity in the property, the bankruptcy court overruled the Trustee's objection to exemption. The bankruptcy court additionally found that because there was no realizable equity in the property, the objection to exemption was effectively moot.[8]

---

**2.** Oklahoma is an opt-out state. Okla. Stat. tit. 31, § 1(B) (2005). The Oklahoma homestead exemption is unlimited in value, and includes up to 160 acres of land outside, or up to 1 acre inside, a city or town. Okla. Stat. tit. 31, § 1(A) (2005); Okla. Stat. tit. 31 § 2 (1997). In contrast to this generous homestead exemption, the federal homestead exemption is limited to $21,625 in value in property used as a residence. 11 U.S.C. § 522(d)(1).

**3.** Regarding this value, the bankruptcy court stated: "The Court finds as a matter of fact that the [home] has a fair market value of $425,000. The Court's conclusion as to value is based upon the October 15, 2010 appraisal report of Chris Bauer, a residential appraiser certified by the State of Oklahoma. The report was admitted into evidence [as] Exhibit 3. This exhibit was a joint exhibit offered by all parties at the evidentiary hearing and it was received without objection." Apr. 27, 2011, Transcript at 8, ll. 3–10, in Aplt. App'x at 497.

**4.** Regarding this value, the bankruptcy court stated: "The only other evidence as to the value of the [home] was the statement by the Debtors in their schedules that the value ... was $600,000. In his testimony to the Court, Mr. Willcut testified without contradiction or objection that this value was based upon the replacement cost of the [home], as established by the homeowners' insurance company. The Court finds Mr. Willcut's testimony to be credible in this regard and, therefore, gives the scheduled valuation of $600,000 no weight." Id. at 8, ll. 11–20, in Aplt. App'x at 497.

**5.** Id. at 11, l. 10, in Aplt. App'x at 500.

**6.** Id. at 7, ll. 11–15, in Aplt. App'x at 496.

**7.** Id. at 14–15, ll. 25, 1–6, in Aplt. App'x at 503–04.

**8.** Id. at 15, ll. 8–22, in Aplt. App'x at 504. In support of this conclusion, the bankruptcy court stated that even if it did disallow the

## II. Jurisdiction and Standard of Review

■ This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[9] The Trustee timely appealed the final decision,[10] and the bankruptcy court's order overruling the Trustee's objection to exemption is an appealable final order.[11] Neither party has elected to have the district court hear this appeal, and this Court, therefore, has appellate jurisdiction.

■ The BAP reviews the bankruptcy court's legal conclusions *de novo* and its findings of fact under the "clearly erroneous" standard of review.[12]

## III. Discussion

### A. Burden of proof.

■ The Trustee, as the party objecting to the Debtors' homestead exemption, bears the burden of proof on his objection.[13]

### B. The word "interest" in § 522(*o* )(4) refers to the Debtors' economic equity in the property, not title.

■ As noted, the main issue on appeal is the bankruptcy court's interpretation of § 522(*o* )(4), and, more particularly, the use of the word "interest" in that section. Under § 522(*o* )(4), "the value of [the Debtors'] interest in" the property "shall be reduced to the extent that such value is attributable to any portion of any [non-exempt] property that the debtor disposed of in the 10–year period" preceding the bankruptcy petition, when the debtor has "the intent to hinder, delay, or defraud a creditor." In overruling the Trustee's objection to exemption, the bankruptcy court focused on the "value of an interest in" language, and the potential mootness that language caused. We do the same.

The Trustee argues that this section of the Bankruptcy Code requires that a debtor's homestead exemption be reduced by the amount applied to that homestead that was derived from a fraudulent transfer of non-exempt property, regardless whether the debtor can repay this amount to creditors by drawing upon the value of the homestead. The Debtors argue that the phrase "value of an interest in" refers only to the increase in the economic equity in the real property, not the holding of title to the property, and that the bankruptcy court was limited to reducing the value of any equitable increase of a debtor's interest in their homestead attributable to the wrongful investment of proceeds of non-exempt property. The Trustee counters that the appropriate remedy, when there is no equity in § 522(*o* )(4) property, is to give the Trustee an equitable lien on the debtor's homestead.

---

exemption, there would be no economic benefit to the estate, and that the property "is not worth enough to justify any efforts made to sell it." *Id.* at 15–16, *ll.* 23–25, 1–2, *in* Aplt. App'x at 504–05.

9. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

10. Apr. 27, 2011, Order at Docket Entry 95, *in* Aplt. App'x at 508.

11. *In re Carlson,* 303 B.R. 478, 480 (10th Cir. BAP 2004).

12. *In re Robinson,* 295 B.R. 147, 149 (10th Cir. BAP 2003).

13. *In re Hall,* 441 B.R. 680, 685 (10th Cir. BAP 2009) ("The Trustee, as the party objecting to the exemption, bears the burden of proof to show the impropriety of the exemption by a preponderance of the evidence.").

As always, the starting point in any case of statutory construction is to look to the language of the statute itself.[14] "When interpreting statutory language, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."[15] The word "interest" is not defined in the Bankruptcy Code. However, words in statutes should be given their common, ordinary meaning.[16] According to Black's Law Dictionary, an interest is "[a] legal share in something; all or part of a legal or equitable claim to or right in property."[17] According to this definition of "interest," the phrase could refer to either legal title or an economic equity interest.

Because we find no help in the dictionary definition, we next look to the language of § 522 as a whole, and other uses of the word "interest" within that statute. As the Supreme Court has noted:

> The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.[18]

The context of the disputed phrase is, thus, important.

Section 522(o) was added to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). At the same time that § 522(o) was added by BAPCPA, subsection (p) to § 522 was also added. Section 522(p) is an additional limitation on homestead exemptions in states, like Oklahoma, with unlimited homestead exemptions. Under § 522(p)—the neighboring provision to § 522(o)—a debtor is prohibited from exempting "any amount of interest that was acquired by the debtor during the 1215–day period preceding the date of the filing of the petition that exceeds in the aggregate [$146,450] in value."

The word "interest" is used within both § 522(o) and § 522(p). The words used within a statute should be interpreted consistently, and it is presumed that "identical words used in different parts of the same act [were] intended to have the same meaning."[19] The full reach of § 522(p) is best evaluated by quoting its relevant provisions:

> (1) a debtor may not exempt *any amount of interest* that was *acquired* by the debtor during the 1215–day period preceding the date of the filing of the petition that exceeds *in the aggregate* $146,450 in value in—

---

14. *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1251 (10th Cir.2001) ("In any case of statutory construction, the starting point of our analysis must begin with the language of the statute itself.").

15. *Id.* at 1252 (internal quotation marks omitted).

16. *Id.* ("The meaning of the words in the statute must be construed in their ordinary, everyday sense.") (internal quotation marks omitted).

17. *Black's Law Dictionary* (9th ed. 2009).

18. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006).

19. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 292, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (internal quotations omitted); *Lippoldt v. Cole*, 468 F.3d 1204, 1213 (10th Cir. 2006) (holding there is a presumption that identical words used in different part of the same act are intended to have the same meaning).

. . .

(D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

(2) . . .

(B) For purposes of paragraph (1), *any amount of such interest* does not include *any interest transferred* from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215–day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.[20]

In this neighboring provision, when the term "interest" is used, the statute appears to refer to equity, not title. For example, in § 522(p)(2)(B), the Code limits the reach of the § 522(p)(1) limitation on the homestead exemption, and refers to "any amount of such interest" in the homestead. This reference would be nonsensical if the word "title" were inserted rather than "equity." In addition, § 522(p)(1) uses the phrases/words "any amount of interest," "acquired" and "in the aggregate," which all lend themselves more readily to a monetary interpretation of the word "interest."

 The addition of § 522(o) to the Bankruptcy Code was "intended to strike a balance between the rights of debtors and creditors in states with unlimited homestead exemptions . . . and to make clear that abusive pre-bankruptcy planning will not be tolerated at the expense of creditors."[21] However, even after BAPCPA's amendments, "[s]ection 522 continues to adopt the position favorably viewed by the Code drafters that the mere conversion of nonexempt property into exempt property, without fraudulent intent, does not deprive the debtor of exemption rights in the converted property."[22] Ultimately, it appears that the purpose of adding § 522(o) and § 522(p) in 2005 was the attempt by Congress to address the pre-BAPCPA "mansion loophole"[23] and to limit the value of homestead exemptions when there is fraud.[24] This lends support to our interpretation of § 522(o)—that the statute was enacted to prevent the fraudulent attempt to build up equity in a homestead.

In support of his position, the Trustee cites to the House Report prepared for BAPCPA, and specifically a portion of a sentence within that report, found in the section titled "Highlights of Bankruptcy Reforms" and subtitled "Consumer Credit Bankruptcy Protections." One portion states: "To the extent a debtor's homestead exemption was obtained through the fraudulent conversion of nonexempt assets (e.g., cash) during the ten-year period preceding the filing of the bankruptcy case, S. 256 requires such exemption to be reduced

20. 11 U.S.C. § 522(p) (emphasis added).

21. *In re Cipolla,* No. 11–50391, 2012 WL 1003555, at *2 (5th Cir. Mar. 26, 2012) (internal quotation marks omitted).

22. 4 *Collier on Bankruptcy* ¶ 522.08[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

23. *See In re Greene,* 583 F.3d 614, 624 (9th Cir.2009) ("Section 522(p) was intended to address the well-documented and often-expressed concern by members of Congress about the so-called 'mansion loophole' by

which wealthy individuals could shield millions of dollars from creditors by filing bankruptcy after converting nonexempt assets into expensive and exempt homesteads in one of the handful of states with unlimited homestead exemptions." *Id.* at 619 (internal quotation marks omitted)).

24. *Compare Parks v. Anderson,* 406 B.R. 79, 91 n. 44 (D.Kan.2009), *with Venn v. Reinhard (In re Reinhard),* 377 B.R. 315, 320 (Bankr. N.D.Fla.2007) (discussing legislative intent of BAPCPA additions and the different interpretations given to the Congressional purpose in closing the "mansion loophole").

by the amount attributable to the debtor's fraud."[25] The Trustee argues this sentence lends support to his title theory, based on the language that an exemption should be reduced by the amount of the cash payment.

■ But it is difficult to reconcile this quoted portion, however, with the actual text of the statute as enacted. The actual text of the statute provides that it is the "*value* of an interest" that the debtor claims as a homestead that should be reduced.[26] We are not swayed by the Trustee's argument, and give effect to the text of the statute, which must necessarily control over ambiguous legislative history.[27]

Focusing again on the language of § 522(*o*)(4), the most persuasive interpretation of the statute is that the phrase "value of an interest in ... real [ ] property" refers to increased economic equity in real property due to a fraudulent transfer of non-exempt funds into the property, rather than a title interpretation of the phrase. The subsection refers to "the value of an interest," which implies a monetary interest—equity, not title. The statute also refers to the value being reduced to the extent "such value is attributable" to a non-exempt conversion. Again, this implies an equity consideration. In addition, as a practical matter, there is no way to reduce the value of a person's legal title in a piece of property when that property is fully encumbered.

A few appellate and bankruptcy courts have considered the definition of "interest" in § 522. Some have adopted the title definition, in § 522(p) contexts.[28] Some have adopted the equity definition when interpreting both § 522(*o*) and § 522(p).[29] Others have been able to render a decision without requiring a decision on this precise issue.[30]

**25.** H.R.Rep. No. 109–31 pt. 1, at 16 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102.

**26.** 11 U.S.C. § 522(*o*) (emphasis added).

**27.** *St. Charles Inv. Co. v. Comm'r of Internal Revenue*, 232 F.3d 773, 776 (10th Cir.2000) ("[L]egislative history may not be used to create ambiguity in the statutory language ... We do not inquire what the legislature meant; we ask only what the statute means." (citation and internal quotation marks omitted)). In addition, the court in *Parks v. Anderson*, 406 B.R. at 91 n. 44, noted that portions of the legislative history concerning the pertinent subsections could also support the contrary argument.

**28.** *See, e.g., In re Greene*, 583 F.3d at 624–25 (concluding that filing a homestead claim for an underlying property interest does not fall within § 522(p) because a homestead claim is not an ownership interest); *In re Aroesty*, 385 B.R. 1, 7 (1st Cir. BAP 2008) (holding that a debtor who previously held a beneficial interest in real property held in trust acquired an "interest" under § 522(p) when record title was received to the trust); *In re Sainlar*, 344 B.R. 669, 673 (Bankr.M.D.Fla.2006) (concluding that the term "interest" in § 522(p) means title interest because the phrase "interest that was acquired" implies actively acquiring title to property); *In re Blair*, 334 B.R. 374, 376–77 (Bankr.N.D.Tex.2005) (concluding that the plain meaning of "interest" in real property under § 522 is the title to a home because "one does not actually 'acquire equity in a home' ").

**29.** *See, e.g., In re Presto*, 376 B.R. 554, 572 (Bankr.S.D.Tex.2007) ("The [objecting party] bears the burden of establishing a current market value in excess of the $521,800.00 purchase price in order to show by what amount the improvements made by the Debtor actually increased the value of the Royal Rose Property."); *Venn*, 377 B.R. at 320 (deciding that "interest" refers to equity and not ownership under § 522(p)); *In re Rasmussen*, 349 B.R. 747, 756 (Bankr.M.D.Fla.2006) (interpreting "interest" to mean acquisition of equity under § 522(p)).

**30.** *See, e.g., In re Fehmel*, 372 Fed.Appx. 507, 511–12 (5th Cir.2010) (concluding that under either definition of "interest," the debtors failed to show that exemption was properly claimed under § 522(p)); *In re Rogers*, 513 F.3d 212, 222–23 (5th Cir.2008) (discussing

We find persuasive the analysis in *Parks v. Anderson*,[31] where the District Court for the District of Kansas found the term "interest" to mean "equity" in both subsections (o) and (p) of § 522. The *Anderson* case originated from a trustee challenge to the debtor's homestead exemption under both § 522(o) and § 522(p). In that case, the debtor's homestead was valued between $411,800 and $636,000, with a $172,380 mortgage. The bankruptcy court was asked to interpret the word "interest" as used in § 522(p), and in doing so referenced § 522(o).[32] The bankruptcy court concluded that while the term "interest" may mean equity in § 522(o), the word meant title or ownership in § 522(p).

The district court reversed the bankruptcy court's interpretation of the term "interest" within § 522(p).[33] The court concluded that if Congress intended § 522(p) be restricted to title interest, then it would not have included the words "any amount of" before the word interest, which implies a value determination.[34] In addition, the court noted that the use of the phrase "interest acquired" in § 522(p) was not determinative of the interpretation, because a debtor could acquire equity in property just like title may be acquired.[35]

The District Court also concluded that subsections (1) and (2) of § 522(p) must be read consistently, and a title definition in § 522(p)(2) would render incomprehensible that subsection's provision for "any interest transferred" from the debtor's previous principal residence into a current residence if both properties are located within the same state.[36] The court noted: "a person does not transfer title from one residence to another, but instead, transfers equity."[37] Finally, the court assessed the interplay between § 522(o) and § 522(p):

> ... § 522(p) permits a debtor to transfer non-exempt assets into a homestead during the 1,215–day period if ... the transfer, in the aggregate, is less than [$146,450]. Section 522(o) provides that a transfer of any amount "shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor...." To impose § 522(o) upon a debtor requires a showing of actual intent of the debtor to hinder or defraud. Absent actual intent to hinder or defraud, a

the title versus equity debate on the definition of interest and implying, but not deciding, that interest refers to equity in § 522(p)),; *In re Khan*, 375 B.R. 5, 11–13 (1st Cir. BAP 2007) (implying that "interest" means ownership under § 522(p), but not deciding issue because debtor failed to present any evidence of his ownership interest); *Turner v. Keck (In re Keck)*, 363 B.R. 193, 212 (Bankr.D.Kan. 2007) (granting equitable lien on homestead under § 522(o) in amount of non-exempt assets converted to cash and used to increase value of homestead where homestead was valued at $90,000, with no secured or tax claims against it).

31. 406 B.R. 79 (D.Kan.2009).

32. *In re Anderson*, 374 B.R. 848 (Bankr. D.Kan.2007). Ironically, and contrary to the facts of this appeal, the trustee in *Anderson* argued the term "interest" to be defined as "equity in the homestead," whereas the debtor preferred the term to mean "title or ownership." The positions are switched in this appeal, because the benefit to the parties if their current preferred definition is adopted is switched.

33. *Anderson*, 406 B.R. at 95.

34. *Id.* at 94.

35. *Id.*

36. *Id.*

37. *Id.*

debtor transferring non-exempt assets to an exempt asset during the 1,215–day period is protected up to [$146,450]. Therefore, we find no conflict between § 522(*o* ) and § 522(p) in applying an "equity" definition to the term "interest."[38]

The court concluded the word "interest" within § 522(p) "refers to equity acquired by a debtor." Likewise, we conclude the similar use of the word "interest" in § 522(*o* )(4) refers to a debtor's economic equity in the real or personal property used as a residence.

The Trustee also argues that the bankruptcy court impermissibly inserted an element into § 522(*o* )(4) that is not actually contained in the statute by requiring him to show realizable equity in the property for the section to apply. To the contrary, the bankruptcy court did not require a new element. It simply interpreted the statute's language. The statute is clear that the Trustee must carry his burden to show how the "value of [the] interest in" the property should "be reduced," and this was necessary to the ultimate resolution of the objection to exemption. The phrase "the value of an interest in … real [ ] property … shall be reduced" means that the equity in the real property obtained through fraudulent transfer of non-exempt assets into exempt assets is to be reduced.

If there is no equity, there is no value subject to reduction.

## C. The bankruptcy court did not clearly err in its factual finding that the property was appropriately valued at $425,000.

■ The Trustee next challenges the bankruptcy court's factual finding that the Debtors had no realizable interest in the property. The Trustee argues that the Debtors are judicially estopped from asserting a valuation different than they claimed in their sworn schedules.

First, however, the Trustee did not argue judicial estoppel before the bankruptcy court.[39] "It is well settled that an appellate court will not entertain an issue that was not first presented to the trial court."[40] Second, even if the Trustee had so argued, the bankruptcy court made a credibility determination when it found that the Debtors honestly, but erroneously, relied on their homeowners' insurance replacement value of the property when completing their bankruptcy schedules. Further, the only other evidence offered to the bankruptcy court was the certified appraisal report valuing the property at $425,000, an appraisal the parties jointly offered into evidence, and which was admitted without objection by the Trustee. The Trustee elected not to offer expert

---

**38.** *Id.* at 95 (footnotes omitted).

**39.** The Trustee, in his reply, argues that he did raise the judicial estoppel argument in the bankruptcy court and cites three record instances in support. Reply Brief at 12 n. 1. Upon closer examination, however, these record cites are not judicial estoppel arguments, but are simply instances where the Trustee referred the court to the fact that the Debtors valued the property at $600,000 in their schedules. *See* Aplt. App'x at 120 (transcript of evidentiary hearing where Debtor Ricky Alan Willcut states that the property was scheduled at $600,000); Aplt. App'x at 142 (transcript of evidentiary hearing where Debt-

or Ricky Alan Willcut states that the value of the property was listed as $600,000 because that was the replacement value given by the insurance company and the Debtors did not want to pay for an appraisal); and Aplt. App'x at 457 n. 3 (Trustee's post-trial brief noting that the property was valued at $600,000 in schedules and that the Debtors had not amended their schedules even though they now submitted a lower appraisal—arguing this lower value was evidence of bad faith).

**40.** *In re Crowder,* 314 B.R. 445, 449 (10th Cir. BAP 2004).

testimony of a higher value. As a result, no evidentiary basis exists to conclude that the bankruptcy court was clearly erroneous in its factual findings.

## IV. Conclusion

We conclude that the phrase "the value of an interest in ... real [ ] property ... shall be reduced" in 11 U.S.C. § 522(o) means that the equity in a debtor's home that was obtained through fraudulent transfer of non-exempt assets into exempt assets is to be reduced. If there is no equity, there is no value subject to reduction. Accordingly, we affirm the bankruptcy court's conclusions of law on this basis. We additionally affirm the bankruptcy court's factual finding that the property had no realizable equity, based on the only evidence presented and on the credibility determinations made therein. We affirm the decision of the bankruptcy court overruling the Trustee's objection to the Debtors' homestead exemption.