# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 16-6028

_____

In re: Todd Allen Crabtree; Terryl Lynn Crabtree

*Debtor*s

------------------------------

Daniel McDermott, United States Trustee

*Plaintiff - Appellee*

v.

Todd Allen Crabtree; Terryl Lynn Crabtree

*Defendants - Appellants*

------------------------------

Todd Allen Crabtree; Terryl Lynn Crabtree

*Debtors - Appellants*

v.

Gene W. Doeling

*Chapter 7 Trustee - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Fergus Falls

Submitted:  December 8, 2016
Filed: January 24, 2017

_____

Before FEDERMAN, Chief Judge, SALADINO and NAIL, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Debtors Todd Allen Crabtree and Terryl Lynn Crabtree ("Debtors") appeal the August 8, 2016 memorandum decision and order of the bankruptcy court sustaining Trustee Gene W. Doeling's ("Trustee") objection to Debtors' claimed homestead exemption.  We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

In March 2012, Debtors began making improvements to the real property they claim as their homestead.  Around the same time, Debtors' daughter Bethany Harris opened a checking account at Wells Fargo Bank.  She and Debtors' son Bror Crabtree were signatories on the account and made some deposits into it.  Debtors were not signatories on the account but made the "large bulk" of the deposits into it.

Debtors used the checking account, which they refer to as "the farm account," to pay for some of the improvements to their homestead.  Between August 21, 2012 and December 3, 2012, Debtors' daughter issued eight checks totaling $45,951.21 to various contractors for that purpose.

The farm account was not the only source of payments for the improvements to Debtors' homestead.  In January 2013, Debtor Todd Crabtree's sister Dianne

-2-

Merrifield wired $19,990.00 to Pierce Log Homes. In July 2013, Debtor Todd Crabtree issued a check for $6,000.00, drawn on his personal checking account, to Ugstad Plumbing. And in August 2013, Debtor Todd Crabtree transferred 250 silver coins to his son-in-law Mike Harris, who sold the coins for $6,375.00, deposited $4,021.53 in his personal checking account, and used the remaining $2,353.47 to pay other contractors.

For reasons unrelated to the construction of their home, Debtors filed a petition for relief under chapter 7 of the bankruptcy code on December 16, 2013. On their schedule of real property, Debtors valued their home at $200,000.00. On their schedule of creditors holding secured claims, Debtors listed a mortgage against their home, with a balance owing of $133,725.00. On their schedule of property claimed exempt, Debtors claimed the equity of $66,275.00 exempt under Minnesota's homestead exemption.

Trustee filed an objection to Debtors' claimed exemptions. In his objection, Trustee alleged, *inter alia*, Debtors' claimed homestead exemption should be reduced under 11 U.S.C. § 522(o) by the $70,000.00 to $90,000.00 of otherwise nonexempt property that Trustee believed Debtors had transferred into their homestead within the past ten years with the intent to hinder, delay, or defraud their creditors.

The United States Trustee filed a complaint objecting to Debtors' discharge. In his complaint, the United States Trustee alleged Debtors should be denied a discharge under 11 U.S.C. § 727(a)(2)(A) for transferring property with the intent to hinder, delay, or defraud their creditors, under 11 U.S.C. § 727(a)(3) for failing to keep or preserve recorded information from which their financial condition and business transactions might be ascertained, and under 11 U.S.C. § 727(a)(4)(A) for making false oaths in or in connection with their bankruptcy case.

The two matters were tried separately, but because of their interconnectedness, the bankruptcy court issued a single memorandum decision and order addressing both. Therein, the bankruptcy court, *inter alia*, sustained Trustee's objection to Debtors' claimed homestead exemption and reduced Debtors' homestead exemption by $74,249.68, comprising the costs of the improvements identified above, denied Debtors' discharge, and directed the entry of judgment in the adversary proceeding.

Debtors timely appealed. Debtors' notice of appeal references both the bankruptcy court's memorandum decision and order and the resulting judgment in the adversary proceeding. However, Debtors do not challenge the bankruptcy court's decision to deny their discharge. They challenge only the bankruptcy court's decision to reduce the amount of their claimed homestead exemption.

STANDARD OF REVIEW

Debtors contend the bankruptcy court erred in its interpretation of 11 U.S.C. § 522(o). We review the bankruptcy court's interpretation of a statute *de novo*. *See Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005).

Debtors also contend the bankruptcy court erred in including the $19,990.00 Debtor Todd Crabtree's sister Dianne Merrifield wired to Pierce Log Homes in the amount by which Debtors' claimed homestead exemption should be reduced. To the extent this implicates the bankruptcy court's findings of fact, we review those findings for clear error. *Islamov v. Ungar* (*In re Ungar*), 633 F.3d 675, 679 (8th Cir. 2011). To the extent it implicates the bankruptcy court's conclusions of law, we review those conclusions *de novo*. *Ungar*, 633 F.3d at 679.

DISCUSSION

With respect to the issue of whether the bankruptcy court erred in its interpretation of § 522(o), that section provides, in pertinent part:

> [T]he value of an interest in–
>
> . . .
>
>> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead[ ]
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt . . . if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o).

Trustee argues § 522(o) is susceptible to more than one meaning. We disagree. Section § 522(o) is clear and unambiguous and requires no interpretation.

> As in all such cases, we begin by analyzing the statutory language, giv[ing] words their ordinary, contemporary, common meaning unless they are otherwise defined in the statute itself[.] If the language's meaning is unambiguous when read in its proper context, then, this first canon is also the last: judicial inquiry is complete[.]

*United States v. Smith*, 756 F.3d 1070, 1073 (8th Cir. 2014) (internal citations and quotation marks omitted).

To prevail under § 522(o), a party objecting to a debtor's claimed homestead exemption must show:

> (1) the debtor disposed of property within the 10 years preceding the bankruptcy filing; (2) the property that the debtor disposed of was nonexempt; (3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.

*In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007). Debtors appear to concede Trustee established each of these elements.

Trustee argues Debtors' claimed homestead exemption should therefore "be reduced . . . by the value of the nonexempt assets converted into the homestead[,]" which is what the bankruptcy court did in this case. Trustee points us to three cases in which other courts have so held: *Turner v. Keck* (*In re Keck*), 363 B.R. 193 (Bankr. D. Kan. 2007); *In re Roberts*, 527 B.R. 461 (Bankr. N.D. Fla. 2015); and *In re Colliau*, 552 B.R. 158 (Bankr. W.D. Tex. 2016).

Debtors disagree. They argue "the plain meaning of [§ 522(o)] requires the objecting party to offer evidence as to what value of the homestead is attributable to non-exempt assets invested in it in the prior ten years." We agree with Debtors.

Section 522(o) authorizes a bankruptcy court to reduce the value of a debtor's interest in a homestead to the extent such value, *i.e.*, the value of the debtor's interest in the homestead, is "attributable" to the debtor's fraudulent conversion of nonexempt property into increased equity in the homestead. Section 522(o) says nothing about the value of that nonexempt property.

> Simply because the [objecting party] has established all of the elements under § 522(o) does not mean that the relief to which it is entitled should be the full amount spent on the improvements to the [homestead]. The scope of [§ 522(o)] is limited to the value in a debtor's homestead that is "attributable" to nonexempt property that was fraudulently converted into equity in the homestead. *The [objecting party] bears the burden of . . . show[ing] by what amount the improvements made by the Debtor actually increased the value of the [homestead].*

*Presto*, 376 B.R. at 572 (emphasis added). *See also Soule v. Willcut* (*In re Willcut*), 472 B.R. 88, 94 (B.A.P. 10th Cir. 2012) ("[Section] 522(o) . . . was enacted to prevent the fraudulent attempt *to build up equity in a homestead*." (Emphasis added.)); *In re Smither*, 542 B.R. 39, 49 (Bankr. D. Mass. 2015) ("[I]f as of the filing date the debtor has no equity in her home and hence her homestead exemption claim has no real value, there would be no § 522(o) reduction in the claimed homestead *even if there were pre-petition fraudulent payments*." (Emphasis added.)).

Where a debtor fraudulently converts nonexempt assets to make improvements to his homestead, a bankruptcy court must therefore determine both the value of the debtor's interest in the homestead with those improvements and the value of the debtor's interest in the homestead without those improvements.[1] In most such cases,

---

[1]The same analysis is not required where a debtor fraudulently converts nonexempt assets to make a down payment on a homestead or to reduce or satisfy a

the difference will be the value of the debtor's interest in the homestead that is "attributable" to the improvements and thus the amount by which the value of the debtor's interest in the homestead must be reduced.[2] The amount the debtor spent on the improvements is relevant only to the extent an appraiser might take it into account in valuing the homestead with the improvements.

Trustee argues our construction of § 522(o) places too great a burden on trustees: "[T]he trustee would presumably be expected to present evidence as to how much increase in value could be 'attributed' to each specific improvement, even those of questionable value, over a 10[-]year period of time." This is, in fact, what § 522(o) requires. And while procuring and presenting such evidence might be more difficult than simply showing how much a debtor spent on improvements to his homestead, this is insufficient reason to ignore the plain language of § 522(o). *See Union Bank v. Wolas*, 502 U.S. 151, 158 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning.").

Trustee also argues our construction of § 522(o) "creates an incentive for dishonest or vindictive debtors to hurt their creditors by converting nonexempt assets to make 'improvements' to their homestead, even where those improvements fail to yield any value or, in fact, could hurt the value of the homestead." We are confident few, if any, debtors would throw their money away in such a manner. And the mere

---

mortgage, judgment lien, or other encumbrance against the homestead. Unlike the cost of improvements, which may not result in a dollar-for-dollar increase in a debtor's equity in his homestead, these sorts of payments "have a direct, equivalent increase in equity." *Presto*, 376 B.R. at 572 n.19.

[2]One obvious exception comes to mind: "In cases where property has increased in value over longer periods of time, the objecting party would also have to show that the increase did not occur from market appreciation." *Presto*, 376 B.R. at 572 n.19.

possibility that a few debtors might do so is also insufficient reason to ignore the plain language of § 522(o). *See Wolas*, 502 U.S. at 158.

We are not persuaded otherwise by the cases cited by Trustee. None of those cases addresses § 522(o)'s use of the word "attributable." *See Presto*, 376 B.R. at 572 n.19 (discussing and reaching the same conclusion regarding *Keck*). To be fair, it does not appear the courts in those cases were called upon to do so.

We, however, have been called upon to do so. And we are not permitted to ignore § 522(o)'s use of the word "attributable": "[A] statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Robertson*, 474 F.3d 538, 540 n.2 (8th Cir. 2007) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992)) (internal quotation marks omitted). Construing § 522(o) as Trustee suggests would effectively write "to the extent that such value is attributable to" out of the statute. This we cannot do.

Similarly, we are not permitted to add provisions to a statute. *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010). Construing § 522(o) as Trustee suggests would write "by the value of the nonexempt assets converted into the homestead" into the statute. This we cannot do, either.

While Trustee believes otherwise, our reliance on the plain language of § 522(o) does not lead to an absurd result. See *King v. Burwell*, ___ U.S. ___, 135 S. Ct. 2480, 2505 (2015) (an absurd result is "a consequence so monstrous, that all mankind would, without hesitation, unite in rejecting the application") (citing *Sturges v. Crowninshield*, 17 U.S. 122, 203 (1819)) (internal quotation marks omitted). Reducing a debtor's claimed homestead exemption by the amount of equity in the homestead generated by the debtor's wrongdoing–as § 522(o) was written to require– rather than by the value of the nonexempt assets he disposed of to generate that equity–as § 522(o) could have been written to require–cannot fairly be described as

monstrous: The debtor will not reap any benefit from his wrongdoing[3] and may be denied a discharge as a further consequence of that wrongdoing, as Debtors have been denied a discharge in this case.

With respect to the issue of whether the bankruptcy court erred in including the $19,990.00 Debtor Todd Crabtree's sister wired to Pierce Log Homes in determining the amount by which Debtors' claimed homestead exemption should be reduced, Debtors argue the $19,990.00 was a gift over which Debtors exercised no control. Trustee counters Debtor Todd Crabtree's familial and professional relationship with his sister gave him sufficient control over her that he was able to direct her to make the transfer, thereby "disposing" of the $19,990.00 within the meaning of § 522(o). Unfortunately, the bankruptcy court did not make either of these findings or reach either of these conclusions. Given the bankruptcy court's ultimate ruling, we could perhaps infer the bankruptcy court agreed with Trustee. However, without knowing why, we cannot affirm the bankruptcy court's decision to include the $19,990.00 in determining the amount by which Debtors' claimed homestead exemption should be reduced under § 522(o).

CONCLUSION

Section 522(o) requires the bankruptcy court to determine the extent to which the improvements Debtors made to their homestead increased the value of Debtors' interest in their homestead. Because the bankruptcy court did not do so, we reverse and remand to allow the bankruptcy court to make this determination[4] and, if it

---

[3]The debtor will be out-of-pocket for the cost of the improvements, and any equity in his homestead generated by his wrongdoing will belong to the bankruptcy estate.

[4]Whether this can be done on the present record is for the bankruptcy court to decide in the first instance.

includes any improvements that were paid for by the $19,990.00 Debtor Todd Crabtree's sister wired to Pierce Log Homes in making this determination, to make findings in support of its decision to do so.

––––––––––––––––––––––––––––