**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

TERRY LEMAC ROBINSON, JR.,

Defendant-Appellant.

No. 04-8082

(D. Wyoming)

(D.C. No. 03-CR-70-D)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **McKAY**, and **HENRY**, Circuit Judges.[**]

---

After the district court denied his motion to suppress, Terry LeMac

Robinson, Jr., entered a conditional guilty plea to possession of a firearm after a

former conviction of a felony, a violation of 18 U.S.C. § 922(g). The district

court sentenced him to twelve months and one day of imprisonment, followed by

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See FED. R. APP. P. 34(F). The case is therefore submitted without oral argument.

two years' supervised release. The court also imposed a $500 fine and a $100 special assessment.

In this appeal, Mr. Robinson challenges the district court's denial of his motion to suppress, arguing that the court clearly erred in finding that a Wyoming Highway Patrolman smelled marijuana upon approaching his car during a traffic stop. We are not persuaded by Mr. Robinson's arguments and therefore affirm the district court's decision.


I.  BACKGROUND

On the morning of February 13, 2003, Wyoming Highway Patrolman Benjamin Peech stopped a Dodge Stratus driven by Mr. Robinson. While standing on the side of the road conducting another traffic stop, Trooper Peech had observed Mr. Robinson's car move from the right lane to the left lane without using a turn signal. Trooper Peech estimated the car's speed at eighty miles per hour and noted that it did not slow down as it approached him.

After obtaining a radar reading of seventy-seven to seventy-eight miles per hour, Trooper Peech activated his patrol lights. Mr. Robinson pulled on to the shoulder and stopped his car. Trooper Peech told Mr. Robinson that he had been going a little fast and had not used his turn signal. Mr. Robinson provided Trooper Peech with a driver's license, registration, and proof of insurance. The

documents indicated that Mr. Robinson had rented the Dodge Stratus in Oakland, California on January 31, 2003, and that the car was to be returned to Oakland on February 2, 2003.

Trooper Peech testified that, as he stood by the window of Mr. Robinson's car, he noticed "a very distinct smell of marijuana coming out of the vehicle." Rec. Supp. vol. II, at 8 (Tr. of July 7, 2003 Hr'g). He also observed several items inside the vehicle: two cell phones and several phone chargers (on the front seat); a green satchel, a green bag, a tan leather jacket, and a paper bag (on the back seat); and a paper sack (between the seats).

According to Trooper Peech, Mr. Robinson also appeared very nervous. His responses were quick, and he was shaking when he handed Trooper Peech his driver's license. Trooper Peech asked Mr. Robinson to come to the patrol car to receive a warning for the traffic violations. As Trooper Peech stepped away from Mr. Robinson's car, he stated into his microphone, "I smell marijuana." Rec. vol. VI (videotape of Feb. 13, 2003 traffic stop).

Upon returning to his patrol car, Trooper Peech asked the dispatcher to run a background check on Mr. Robinson's driver's license, registration, and criminal history. While he waited for the dispatcher to obtain this information, he asked Mr. Robinson about his travel plans. Mr. Robinson told Trooper Peech that he was employed by a clothing company; that he had flown from Los Angeles to

Oakland, where he had rented the car; that he then had driven to Sacramento to visit his son; and that he had then left Sacramento to drive to New York, where he planned to pick up Converse shoes to take to a trade show in Las Vegas. He added that some other employees from his company were planning to fly from New York to Las Vegas for the trade show.

Trooper Peech found Mr. Robinson's itinerary unusual: it made little sense that Mr. Robinson's company would direct him to rent a relatively small car and drive it from Oakland to New York, load it with shoes, and then drive it to Las Vegas when the company already had employees in New York who were traveling by plane to the same Las Vegas trade show.

After waiting ten to twelve minutes for the dispatcher to complete the inquiry, Trooper Peech returned the driver's license, vehicle registration, and rental agreement to Mr. Robinson and told him that he was free to go. At the hearing, Trooper Peech explained that he did not know how long the dispatcher was going to take and that he got tired of waiting.

As Mr. Robinson walked back to his car, Trooper Peech followed him and inquired whether he could ask a few more questions. Mr. Robinson responded that he had to go. Trooper Peech then told Mr. Robinson that he had smelled marijuana and had observed Mr. Robinson's nervous behavior. He asked Mr Robinson what was in the trunk. Mr. Robinson responded that nothing was in the

trunk and denied that Trooper Peech smelled marijuana. He told Trooper Peech that he had to leave and reminded Trooper Peech that he had given him permission to do so. Trooper Peech responded that "it's up to you whether you want to answer questions or not." Rec. vol. VI. However, after Mr. Robinson again asked him whether he could go, Trooper Peech responded "Nope, we're waiting for a dog." Id. He added, "You got a little weed in there, tell me you got a little weed. I grab it, it's a ticket, . . . . You get a ticket and you're on your way on down the road." Id. Trooper Peech then reminded Mr. Robinson that he had summoned a dog and asked Mr. Robinson if he could search the car. Mr. Robinson responded, "Yeah, go ahead," and he told Trooper Peech that there was a marijuana joint in the ashtray. Id.

Trooper Peech directed Mr. Robinson to have a seat in the patrol car. After Mr. Robinson complied, Trooper Peech began to search Mr. Robinson's car. In the ashtray, he found a hollowed-out cigar (or blunt) filled with marijuana. In a paper sack on the back seat, he found thirteen small marijuana plants. In a paper sack behind the passenger's seat, he found a metal halide growing lamp and a bottle of plant food. He also discovered marijuana filings on the center console and an orange prescription bottle containing marijuana. Finally, in the bottom of the green satchel, he found a Colt .45 semi-automatic pistol.

Trooper Peech then proceeded to the trunk. There, he found a roll of mylar, two bags of plant soil, a bag of lava rocks, numerous black buckets, two buckets with holes, a half-full packet of horticultural perlite, a transformer, a bottle of $CO_2$ gas, a plastic bag containing three bottles of plant food, a gray-colored tarp, and a large black bag containing clothing.

After the government charged Mr. Robinson with a § 922(g)(1) firearm violation, Mr. Robinson filed a motion to suppress the evidence that Trooper Peech had discovered in the car. After conducting a hearing, the district court denied the motion. It reasoned that the fact that Trooper Peech had smelled marijuana emanating from Mr. Robinson's car was sufficient to justify the continued detention.

Following the denial of the motion, Mr. Robinson requested new counsel. The court granted the motion, and Mr. Robinson's new attorney filed a renewed motion to suppress. He requested a hearing to present testimony from a former law enforcement officer that it would not have been possible for Trooper Peech to have smelled the small quantity of marijuana in the ashtray. The government then stipulated that Trooper Peech could not have smelled the live marijuana plants inside the paper sack.

The district court granted Mr. Robinson's request for a second hearing. At the hearing, Mr. Robinson presented testimony from Richard Sargent, a private

investigator who had worked as a law enforcement officer for sheriffs in Wyoming and Colorado. Mr. Sargent testified that, based upon his experience, a person standing outside Mr. Robinson's car would not have been able to smell the marijuana in the closed ashtray or the other marijuana found in the passenger compartment.

The judge then decided to conduct an experiment. He directed Trooper Peech to open the package containing the blunt taken from Mr. Robinson's car, place it in the jury room, and close all doors. Subsequently, the judge, Trooper Peech, and the attorneys entered the jury room. When standing four feet from the bag, no one could smell marijuana. The judge reported that he could not smell any marijuana unless he placed his nose right up to the bag.

After considering this additional evidence, the court issued a second order denying Mr. Robinson's motion to suppress. It concluded that "[t]he further cross-examination of Trooper Peech and the testimony offered by Mr. Sargent does not convince the Court that Trooper Peech did not smell raw marijuana emanating from [Mr. Robinson's] car." Rec. vol. I, doc. 77, at 3 (Order on Renewed Motion to Suppress, filed Mar. 26, 2004).

## II. DISCUSSION

On appeal, Mr. Robinson challenges the district court's factual finding that when he first approached Mr. Robinson's car, Trooper Peech smelled raw marijuana. Significantly, Mr. Robinson concedes that the district court's finding that Trooper Peech smelled marijuana is "the key finding in this case." Aplt's Br. at 32. He explains that "if [that finding is] allowed to stand, [Trooper] Peech had either probable cause to search the vehicle at that time, or a reasonable and articulable suspicion of criminal activity sufficient to warrant detaining Mr. Robinson for further questioning and investigation." Id. at 32-33.

According to Mr. Robinson, Trooper Peech's testimony was not credible for several reasons.

First, he asserts that Trooper Peech testified falsely as to the traffic stop of the Tennessee driver that immediately preceded the stop of Mr. Robinson. In particular, Mr. Robinson cites Trooper Peech's testimony that he wrote out a warning ticket or a citation to the Tennessee driver. Mr. Robinson contends that "[t]he record establishes that this testimony was false, for there was simply not enough time for Peech to have accomplished this task." Id. at 33. He also cites Trooper Peech's testimony that he observed Mr. Robinson change lanes twice without using his turn signals. According to Mr. Robinson, the videotape of the stop of the Tennessee driver reveals that Trooper Peech looked at Mr. Robinson's

car for less than two seconds, "which was less time than it would have taken [Mr.] Robinson to commit the alleged infractions." Id. at 37.

Second, Mr. Robinson points to various statements by Trooper Peech about the blunt he found in Mr. Robinson's car. He notes that Trooper Peech first stated that the blunt was unburned, but later acknowledged that the blunt was partially burned. He adds that it was implausible that the small quantity of marijuana contained in the blunt could have generated the odor that Trooper Peech allegedly detected.

Third, Mr. Robinson observes that by his own account, Trooper Peech lied to him in conducting the stop. As we have noted, after returning Mr. Robinson's driver's license, Trooper Peech told Mr. Robinson that he was free to go. At the hearing on the motion to suppress, Trooper Peech admitted that this statement was a "ruse." Rec. Supp. vol. II, at 29.

Finally, Mr. Robinson contends that the district court erred in explaining what happened during the stop. He points to a statement during the hearing on the motion to suppress indicating that the court believed that Trooper Peech had placed his head inside Mr. Robinson's car before declaring that he had smelled marijuana.

A. Standard of Review

In considering Mr. Robinson's arguments, we view the evidence in a light most favorable to the district court's legal determinations, and review the court's findings of fact for clear error. United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if [we], after reviewing all the evidence, [are] left with a definite and firm conviction that the a mistake has been made." Manning v. United States, 146 F.3d 808, 812 (10th Cir. 1998) (quoting Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 511 (10th Cir. 1985)). A party asserting that a factual finding is clearly erroneous faces a high burden. As the Seventh Circuit has colorfully explained, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Piraino v. International Orientation Resources, Inc., 137 F.3d 987, 989 (7th Cir. 1998). This deferential standard of review is grounded in the fact that the district court is "in a superior position to judge the witnesses' credibility and the weight to be given their testimony, since the court could see the witnesses when they testified and observe their demeanor on the witness stand." United States v. Carr, 80 F.3d 413, 417 (10th Cir. 1996).

Accordingly, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City

of Bessemer City, 470 U.S. 564, 574 (1985). When the district court's factual determination is "plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id.

B. The District Court's Factual Findings

Applying these standards, we are not persuaded that the district court clearly erred in finding that Trooper Peech smelled marijuana as he stood by the window of Mr. Robinson's car.

We begin with Mr. Robinson's contention that Trooper Peech's testimony about the prior stop and his other allegedly false or misleading statements rendered the testimony about smelling marijuana unworthy of belief. In advancing that argument, Mr. Robinson invokes the principle of *falsu in uno, falsus in omnibus* (false in one thing, false in everything), which is embodied in a common law jury instruction. See Shelton v. United States, 169 F.2d 665, 667 (D.C. Cir. 1948) (discussing the principle); Lambert v. Blackwell, 387 F.3d 210, 256 (3d Cir. 2004) (discussing the jury instruction). However, that principle does not have the broad application that Mr. Robinson urges here. Although the factfinder may base its rejection of a witness's testimony on a finding that he or she has testified falsely about another matter, the factfinder is not required to do so.

> The maxim, "" as applied to witnesses, is not an inflexible rule of evidence, nor is it mandatory; the trial court need not require the jury to disregard a witness' testimony altogether even if it is proved or conceded to be false in part. . . . [T]he maxim has to do solely with the weight of the testimony, not with its admissibility.

Shelton , 169 F.2d at 667; Yongo v. INS , 355 F.3d 27, 33 (7th Cir. 2004) (characterizing the maxim as "a longstanding but overstated precept"). Again, as the Seventh Circuit has explained, "[o]bviously there are some lies that, because of their circumstances and limited relationship to the main issue, do relatively little to discredit other statements." Id. For example, "[a] lie by a fleeing victim to a tyrant's border guard is not the same as a lie under oath in an INS proceeding about the circumstances of persecution." Id.; see also Palazzo ex rel. Delmage v. Corio , 232 F.3d 38, 44 (2d Cir. 2000) ("To the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility.").

Here, Trooper Peech's allegedly false statements about the prior stop and other matters did not require the district court to find his testimony about the smell of marijuana unbelievable. Indeed, as the government observes, a reasonable factfinder could conclude that these statements did not constitute intentional falsehoods. As to the prior stop, Trooper Peech's testimony was somewhat tentative. At the first hearing on the motion to suppress, he stated that he "really d[id]n't remember" the nature of the first stop. Rec. Supp. vol. II, at

-12-

20. He added, "I would have written a warning probably, maybe a citation, one or the other." Id. He repeated that statement at the second hearing. Rec. vol. IV, at 13 (tr. of Mar. 2, 2004 Hr'g). Thus, even if it later appeared to the district court that, contrary to Trooper Peech's testimony, he did not have time to write the driver a warning or a citation before pursuing Mr. Robinson, such a conclusion did not compel the court to discredit the testimony about the smell of marijuana. Cf. English v. Cody, 241 F.3d 1279, 1285 (10th Cir. 2001) (concluding that inconsistencies in the witnesses testimony did not undermine his testimony as a whole); see also Allen v. Chicago Transit Auth., 317 F.3d 696, 702 (7th Cir. 2003) (concluding that, even when a witness commits perjury, that fact "is a circumstance to be weighed by the jury in determining a witness's credibility rather than a ground for removing the issue of credibility from the jury by treating the witness's entire testimony as unworthy" and observing that "obviously there are cases, perhaps the majority, in which a witness's testimony is a compound of truth and falsity").

Similarly, the testimony presented by Mr. Robinson from Mr. Sargent did not require the district court to reject Trooper Peech's statements. As the district court observed, Mr. Sargent's testimony had its own weaknesses. For example, on cross-examination he admitted that he had no particular experience with the kind of situation confronted by Trooper Peech when he stopped Mr. Robinson and that he did not know the type of marijuana involved in this case.

Additionally, Trooper Peech's various statements about the marijuana blunt do not support Mr. Robinson's claim of clear error. The fact that Trooper Peech first testified that the blunt was unburned and then at the second hearing acknowledged that the blunt was partially burned did not require the district court to reject the testimony about the smell of raw marijuana when standing by the door of Mr. Robinson's car. Moreover, as the government notes, despite the relatively small quantity of marijuana discovered in the blunt, it is not inconceivable that there may have been other raw marijuana in Mr. Robinson's car during his recent travels.

Finally, contrary to Mr. Robinson's suggestion, the district court did not erroneously find that Trooper Peech had leaned inside Mr. Robinson's car when he initially stopped him. During the second hearing, the judge asked, "We know from looking at the tape that he did, in fact, stick his head in, right?" Rec. vol. IV, at 89. Mr. Robinson's attorney responded, "I think [Trooper Peech] approached where the glass would have been." Id. The judge replied, "Well, the tape won't lie. I'll look and see what [Trooper Peech] was doing just before he made the statement on the audio [that he smelled marijuana]." Id. Thus, the district court merely suggested the possibility that Trooper Peech had leaned into the car and then announced that it would view the videotape of the stop to determine Trooper Peech's position. In its written orders, the district court did

not find that Trooper Peech had leaned into the car.  Thus, there is no clear error here either.

As a result, we conclude that the district court did not clearly err in finding that Trooper Peech smelled raw marijuana when standing by the window of Mr. Robinson's car.  As Mr. Robinson acknowledges, that factual finding establishes that the subsequent detention and ensuing search were supported by reasonable suspicion and probable cause and were thus reasonable under the Fourth Amendment.  See United States v. Ozbirn, 189 F.3d 1194, 1200 (10th Cir. 1999) (concluding that the smell of raw marijuana emanating from a motor home during a traffic stop was sufficient to establish the reasonable suspicion necessary to justify the further detention of the driver and the passenger and that "the odor of marijuana . . . along with the other suspicious conduct . . . , including nervous, talkative, and overly-friendly behavior, and vague description of . . . travel plans also satisfies the higher standard of probable cause").  [1]

_____

[1] We do not address the district court's conclusion that Trooper Peech's search of the car was valid because Mr. Robinson consented.  See Rec. vol. I, doc. 48, at 6 (Order on Defendant's Mtn. to Suppress, filed Sept. 10, 2003) (stating that "Defendant's subsequent consent to search was valid").  However, we note that this conclusion is debatable.  Immediately before Mr. Robinson told Trooper Peech that he could search the car, Trooper Peech stated that he had called a drug dog.  Thus, Mr. Robinson may well have believed that refusing consent was pointless.  That raises considerable doubt as to whether he acted knowingly and voluntarily in allowing Trooper Peech to search his car.  See United States v. Maez, 872 F.2d 1444, 1456 (10th Cir. 1989) (concluding that officers' statements that they could get a search warrant if the defendant refused consent "tend[ed] to

(continued...)

-15-

## III. CONCLUSION

Accordingly, we AFFIRM the district court's denial of Mr. Robinson's motion to suppress.

Entered for the Court,


Robert H. Henry
Circuit Judge

---

[1](...continued)
undermine any salutary effect that advice of the right to refuse consent might have"); see also United States v. Kim, 25 F.3d 1426, 1432 (9th Cir. 1994) (listing officers' statements to the defendant that they could obtain a search warrant as one factor "militat[ing] against a voluntariness determination"); United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993) (citing the defendant's belief that "discovery of the incriminating evidence was inevitable" as one factor indicating that the consent was not knowing and voluntary).