**FILED**

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

**September 3, 2025**

**Anne M. Zoltani
Clerk**

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

|  |  |
|---|---|
| IN RE CURT MICHAEL RANTA, | BAP No. CO-24-21 |
| Debtor. | |
| _____ | Bankr. No. 23-13269 |
| CURT MICHAEL RANTA, | Chapter 7 |
| Appellant, | |
| v. | |
| MARK KRIGSMAN, LISA KRIGSMAN, ANNALIESE KAMBOUR, and LAWRENCE RUBIN, | OPINION |
| Appellees. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Before **SOMERS**, **JACOBVITZ**, and **PARKER**, Bankruptcy Judges.

_____

**SOMERS**, Bankruptcy Judge.

The Bankruptcy Code permits debtors to protect certain property through

exemptions, but it does not allow them to shield assets from creditors by converting

---

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

nonexempt funds into exempt homestead equity when done "with the intent to hinder, delay, or defraud a creditor." Congress enacted this restriction in 11 U.S.C. § 522(o)[2] to prevent debtors from fraudulently sheltering substantial wealth in real estate before filing. Here, a chapter 7 debtor claimed a homestead exemption in a Colorado residence purchased with more than $300,000 of nonexempt funds within two years of his petition. Following an objection from certain creditors, the Bankruptcy Court reduced the claimed exemption to zero under § 522(o) finding that the debtor acted with the intent to hinder or delay creditors. After review of the record and applicable law, we determine the Bankruptcy Court applied the correct legal standard, made credibility findings supported by the evidence, and reached a result consistent with the text and purpose of the statute, and thus, affirm.

## I.    Background

Curt Michael Ranta ("Appellant") is a former real estate developer who operated through various entities including Rantaman Properties, Inc. ("Rantaman").[3] By 2017, Marc Krigsman, Lisa Krigsman, Lawrence Rubin, and Annaliese Kambour (collectively, "Appellees") invested over $3.7 million in Rantaman's Beverly Hills development project.[4] The project ultimately failed, and the senior lender foreclosed, leaving Appellees unpaid.[5]

---

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code (the "Code"), 11 U.S.C. § 101 et seq.

[3] *Opinion and Order* at 2, *in* Appellant's Am. App. at 716.

[4] *Id.*

[5] *Id.*

In February 2022, Appellant purchased and moved into a home located at 16966 Rose Mallow Way in Parker, Colorado ("Rose Mallow Property").[6] The purchase was made with a $309,095.34 cash down payment and a $1,183,955 mortgage, with 99% of the title vested in Appellant's spouse Christina Charles ("Charles") and 1% in Appellant.[7] Appellant later testified this ownership structure was part of a personal estate planning strategy.[8]

In June 2022, Appellees sued Appellant in California state court.[9] On February 17, 2023, Appellees obtained final judgments against Appellant totaling $4.4 million.[10] On July 25, 2023, Appellant filed a voluntary chapter 7 petition in the United States Bankruptcy Court for the District of Colorado.[11] His initial schedules listed his residence as the Rose Mallow Property valued at $16,360.22[12] (1% of the scheduled value of $1,636,021.50) and claimed a $175,000 homestead exemption under Colorado law.[13] He later amended his Schedule C to claim the same exemption amount under California's homestead exemption.[14] Appellant also listed Dovenmuehle Mortgage as holding a secured claim against the Rose Mallow Property in the amount of $1,156,801.22 on his

---

[6] *Id*. at 1, *in* Appellant's Am. App. at 717.
[7] *Id*. at 8, 14, *in* Appellant's Am. App. at 722, 728.
[8] *Tr*. at 29–30, *in* Appellant's Am. App. at 550-51.
[9] *Opinion and Order* at 2, *in* Appellant's Am. App. at 716.
[10] *Id*.
[11] *Voluntary Petition* at 1, *in* Appellant's Am. App at 6.
[12] *Schedule C* at 1, *in* Appellant's Am. App. at 29.
[13] *Id.*
[14] *Amended Schedule C* at 1, *in* Appellant's Am. App. at 77.

3

Schedule D[15] and an encumbrance against the Rose Mallow Property with an additional encumbrance held by PNC Bank in the amount of $267,493.00.[16]

On October 25, 2023, Appellant filed a *Motion to Abandon Interest in Property Pursuant to 11 U.S.C. § 554(b)* (the "Motion"),[17] arguing that the estate's 1% interest in the Rose Mallow Property was of inconsequential value. On November 13, 2023, Appellees filed the *Judgment Creditors' Objection to the Debtor's Claimed Exemptions* asserting Appellant could not use California exemptions. Subsequently, Appellees filed a *Supplement to Objection to Motion to Abandon Interest in Property Pursuant to 11 U.S.C. § 554(b)*[18] arguing Appellant "converted his nonexempt property (cash) into the claimed exempt property [Rose Mallow Property]."[19] Appellees also objected under section 522(o) arguing that "the Bankruptcy Court should decrease the claimed exemption by an amount equal to the converted property" entitling Appellant only to a $0 exemption.[20]

Following the close of briefing, the Bankruptcy Court held an evidentiary hearing on May 15, 2024, on the combined issues of abandonment and objections to

---

[15] *Schedule D* at 2, *in* Appellant's Am. App. at 32.

[16] *Id*. at 3, *in* Appellant's Am. App. at 33. Appellant indicated he was not personally liable on this debt.

[17] Motion, *in* Appellant's Am. App. at 79.

[18] *Supplement to Objection to Motion to Abandon Interest in Property Pursuant to 11 U.S.C. § 554(b)*, *in* Appellant's Am. App. at 123.

[19] Appellees' Br. at 13.

[20] *Id*.

exemptions.[21] Appellant testified in person, while his spouse, Charles, appeared by videoconference from Spain, where the family had relocated as of January 2024.[22] Charles Wickstrom, a general accountant, also provided expert-witness testimony.[23] Jeffrey George, CPA, testified as an expert witness on behalf of Appellees. Both experts offered testimony regarding transfers between Appellant's and Charles's personal and business accounts in connection with the purchase of the Rose Mallow Property.[24]

On September 5, 2024, the Bankruptcy Court entered its *Opinion and Order* ("Order"), which (1) reduced Appellant's claimed homestead exemption to $0 ("Order Reducing Exemptions") and (2) denied Appellant's motion to abandon his interest in the Rose Mallow Property as premature ("Order Denying Motion to Abandon"). In the Order, the Bankruptcy Court found Appellant's use of California law for exemptions was proper pursuant to § 522(b)[25] and that Appellant had converted his nonexempt cash into the Rose Mallow Property with intent to delay, hinder or defraud the Appellees pursuant to § 522(o).[26]

On September 13, 2024, Appellant filed a *Motion for Reconsideration of Order*, which the Bankruptcy Court denied on October 24, 2024. On November 6, 2024, Appellant appealed the Order.

---

[21] *Opinion and Order* at 3, *in* Appellant's Am. App. at 717. Prior to the hearing, the parties stipulated the current fair market value of the Rose Mallow Property was $1.6 million. *Id.* This left approximately $175,704 of equity in the Rose Mallow Property.

[22] *Id.* at 4, *in* Appellant's Am. App. at 718.

[23] *Id.*

[24] *Id.*

[25] *Id.* at 4–5, *in* Appellant's Am. App. at 718–19.

[26] *Id.* at 12–14, *in* Appellant's Am. App. at 726–28.

## II. Jurisdiction

The BAP has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[27] No party elected to have the district court hear this appeal. Appellant timely filed his notice of appeal from the Order. A prior BAP panel determined "[t]he Order Denying Motion to Abandon . . . [was] interlocutory," and therefore only allowed "[the] appeal [to] proceed with respect to the Order Reducing Exemptions."[28] Accordingly, this Court has jurisdiction to review the Order Reducing Exemptions.

## III. Statement of Issues and Standard of Review

A review of Appellant's brief indicates there are three issues on appeal:

1. Did the Bankruptcy Court erroneously find Appellant acted with intent to delay, hinder, or defraud?

2. Did the Bankruptcy Court err in its interpretation and application of § 522(o)?

3. Did the Bankruptcy Court err in its application of the burden of proof?

A bankruptcy court's interpretation and application of the Code is reviewed de novo.[29] "*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[30] Accordingly, we give no deference

---

[27] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[28] *Order Allowing Appeal to Proceed in Part* [BAP ECF No. 26] at 2.

[29] *In re Hesser*, 984 F.2d 345, 348 (10th Cir. 1993).

[30] *In re Liehr*, 439 B.R. 179, 182 (10th Cir. BAP 2010) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

to the Bankruptcy Court's interpretation of § 522(o) and apply the same standard as the Bankruptcy Court.

The BAP reviews a bankruptcy court's finding of fact, including those regarding intent, under a clearly erroneous standard.[31] "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made."[32] A party asserting a factual finding is clearly erroneous faces a high burden. This deferential standard of review is based on the fact that a trial court is "in a superior position to judge the witnesses' credibility and the weight to be given their testimony, since the [bankruptcy] court could see the witnesses when they testified and observe their demeanor on the witness stand."[33] "Accordingly, where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[34] When a bankruptcy court's factual determination is "plausible in light of the record viewed in its entirety," an appellate court may not reverse it "even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."[35]

---

[31] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997); Fed. R. Bankr. P. 8013.

[32] *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (citing *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 511 (10th Cir. 1985)).

[33] *United States v. Robinson*, 146 F. App'x 255, 259–60 (10th Cir. 2005) (unpublished) (citing *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996)).

[34] *Id.* at 260 (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

[35] *Id.*

**IV. Analysis**

### A. Statutory Framework

The Code allows debtors to exempt certain property from the bankruptcy estate under state or federal law.[36] States are permitted to opt-out of the federal exemptions and limit a resident's exemptions to those allowed under state law.[37] California, whose exemptions apply, has opted out of the federal exemptions, so Appellant may claim California state law exemptions, which include a homestead exemption.[38]

Appellant's ability to protect a home using state-specific homestead exemptions, however, is not without limitation. Section 522(o) provides that "the value of an interest in" homestead property shall be reduced to the extent that such value is attributable to any portion of any property that Appellant (i) could not have been exempted; and (ii) that has been disposed of in the 10-year period before the filing of the petition "with the intent to hinder, delay, or defraud a creditor." In other words, under § 522(o), if Appellant's conversion of nonexempt assets into homestead property was done with the intent to hinder, delay, or defraud a creditor, "[Appellant's] claim of exemption may be challenged even though such conversion would not defeat the exemption under state law."[39]

---

[36] 11 U.S.C. § 522(b).

[37] *Id. See also In re Tucker*, No. 24-cv-304-CNS, 2025 WL 926485, at *2 (D. Colo. Mar. 27, 2025) (citing 11 U.S.C. § 522(b)).

[38] The Bankruptcy Court found California exemptions apply, and Appellant does not challenge that finding on appeal. Order at 6, *in* Appellant's Am. App. at 720; Cal. Civ. Proc. Code §§ 703.130, 704.730 (West 2024); *In re Mulch*, 182 B.R. 569, 572 (Bankr. N.D. Cal. 1995).

[39] 4 Collier on Bankruptcy ¶ 522.08[5] (Richard Levin & Henry J. Sommer eds., 16th ed.) (Section 522(o) applies to "the conversion through the sale, transfer or other

"In light of Congress' adoption in section 522(o) of the identical 'intent to hinder, delay or defraud' language found in section 548(a)(1)(A) and section 727(a)(2), [bankruptcy courts] [have] look[ed] to case law under these sections for guidance in construing the requisite intent under section 522(o)."[40] Thus, Appellant's "exemptible interest in homestead property should not be reduced absent a specific intent on the part of [Appellant] to defraud a creditor, and this intent must involve actual rather than constructive intent."[41]

"Because rare is the occasion when a party lays bare his or her subjective intent, '[f]raudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'"[42] Thus, a party asserting an objection to exemptions based on § 522(o) may attempt to prove actual fraud by relying upon circumstantial evidence including the existence of any "badges of fraud."[43] These badges of fraud may include the following:

1. The transfer or obligation was to an insider;
2. Debtor retained possession or control of the property transferred after the transfer;
3. The transfer or obligation was disclosed or concealed;
4. Before the transfer was made or obligation was incurred, Debtor had been sued or threatened with suit;
5. The transfer was of substantially all Debtor's assets;
6. Debtor absconded;

---

disposition of nonexempt property into exempt homestead property with fraudulent intent.").

[40] *Id.* (citing *In re Addison*, 540 F.3d 805 (8th Cir. 2008); *In re Stanton*, 457 B.R. 80 (Bankr. D. Nev. 2011)).

[41] *Id*. (citing *In re Agnew*, 355 B.R. 276 (Bankr. D. Kan. 2006)).

[42] *In re Warren*, 512 F.3d 1241, 1249 (10th Cir. 2008) (quoting *Farmers Coop Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)).

[43] *Id*. *See also In re Taylor*, 133 F.3d at 1338–39 (relying on badges of fraud enumerated in the Uniform Fraudulent Transfer Act to assess fraudulent intent).

7. Debtor removed or concealed assets;

8. The value of the consideration received by Debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9. Debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. The transfer occurred shortly before or shortly after a substantial debt was incurred;

11. Debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of Debtor.[44]

Assessing fraudulent intent is a "'peculiarly fact-specific'" endeavor and "'the activity in each situation must be viewed individually.'"[45] Federal Rule of Bankruptcy Procedure 4003(c)[46] provides a party objecting to an exemption has the initial burden of proving any exemptions are not properly claimed.[47] In the Tenth Circuit, this means: "[i]nitially . . . the objecting party has the burden of production and persuasion. If the objecting party can produce evidence to rebut the exemption, the burden then shifts back to the debtor to come forward with evidence to demonstrate that the exemption is proper."[48] The standard of proof for an objection to an exemption is a preponderance of the evidence.[49] This Court has also held, in the context of § 522(o), that the objecting

---

[44] *See* Cal. Civ. Code § 3439.04(b) (West 2024). The badges of fraud enumerated in the California Uniform Voidable Transactions Act are the same as those found in the Colorado Fraudulent Transfers Act, Colo. Rev. Stat. § 38-8-105(2). As a result, it is immaterial which grouping of badges of fraud is cited.

[45] *In re Warren*, 512 F.3d at 1250 (quoting *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991)).

[46] All future references to "Rules" refer to the Federal Rules of Bankruptcy Procedure.

[47] Fed. R. Bankr. P. 4003(c).

[48] *Gregory v. Zubrod (In re Gregory)*, 245 B.R. 171, 174 (10th Cir. BAP 2000) (citing *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)).

[49] *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Agnew*, 355 B.R. 276, 284 (Bankr. D. Kan. 2006).

10

party has burden to show how the "value of [the] interest in" the property should "be reduced."[50]

### B. The Bankruptcy Court Did Not Clearly Err in Finding Appellant Acted with Intent to Hinder, Delay, or Defraud Creditors.

#### a. *The Bankruptcy Court's Findings*

The Bankruptcy Court found Appellant acted with intent to hinder, delay, or defraud creditors under § 522(o) based on multiple "badges of fraud."[51] Specifically, the Bankruptcy Court, after considering the badges of fraud, found:

(a)    The Rose Mallow Property was acquired through the mortgage obtained solely in [Appellant's] name and the evidence established the funds used for the balance of the purchase price can be traced to [Appellant's] nonexempt property. The title was vested in Charles, an insider.

(b)    The evidence established [Appellant] resided in the Rose Mallow Property after the transfer was made.

(c)    [Appellant] concealed his true interest in the Rose Mallow Property by only retaining a 1% ownership interest despite providing all of the funds used to purchase the property. [Appellant] also attempted to conceal the source of the funds used for the down-payment by transferring the funds to accounts held by Charles. There was no evidence Charles used her own assets for the down payment.

(d)    At the time of the transfer, [Appellant] was subject to the personal guarantees of the promissory notes to [Appellees], which had become unsecured after the primary obligor, Rantaman, filed bankruptcy and the development property securing the obligation was foreclosed upon by the senior lender.

(e)    The conveyance of the 99% interest in the Rose Mallow Property was in furtherance of the "estate planning strategy" to transfer substantially all of the [Appellant's] assets to Charles. In this regard, [Appellant] produced no evidence that he had engaged professionals to prepare a formal estate planning strategy memorialized by a will and/or trust.

(f)    [Appellant] and Charles have moved to Spain.

(g)    The "estate planning strategy" is an attempt to conceal assets.

(h)    [Appellant] did not receive reasonably equivalent value for the transfer of the 99% interest in the Rose Mallow Property because he provided the entire purchase price.

---

[50] *In re Willcut*, 472 B.R. 88, 97 (10th Cir. BAP 2012).

[51] Order at 13–14, *in* Appellant's Am. App. at 727–28.

11

(i)    At the time of the transfer, [Appellant] admitted he was not solvent, and, in fact, [Appellant] became insolvent after the transfer of his ownership interest in the Rose Mallow Property to Charles.

(j)    At the time the transfer occurred, the personal guarantees were triggered by the failure of the Rantaman development project.[52]

The Bankruptcy Court also found Appellant was the source of the funds used to purchase the Rose Mallow Property and that those funds were nonexempt.[53] Although Charles made down-payments totaling $120,000 from her personal accounts, the Bankruptcy Court credited the testimony of Appellees' expert, Jeffrey George, who traced the origin of those funds to accounts previously owned or controlled by Appellant or his former business.[54] The Bankruptcy Court further found Appellant was insolvent at the time of the transaction and that the funds were intentionally funneled through Charles's accounts to obscure Appellant's role in the purchase.[55]

The Bankruptcy Court further made specific credibility findings. It found Appellant's testimony "inconsistent, at times evasive, and generally, not credible," and concluded that Charles was combative and uncooperative in her remote appearance.[56] It emphasized the timing of the transaction, which occurred shortly after Appellant became personally liable for more than $1 million in debt to Appellees.[57] The Bankruptcy Court found that beginning in 2018, Appellant implemented a last-minute "estate planning

---

[52] *Id.*

[53] *Id.* at 13, *in* Appellant's Am. App. at 727. Despite only holding a 1% legal interest, Appellant continued to reside in and control the Property.

[54] *Id.* at 11, *in* Appellant's Am. App. at 725.

[55] *Id.* at 13–14, *in* Appellant's Am. App. at 727–28.

[56] *Id.* at 4, *in* Appellant's Am. App. at 718.

[57] *Id.* at 10–13, *in* Appellant's Am. App. at 724–27.

strategy" to transfer 99% ownership of several properties to Charles while retaining control over the finances, including in connection with the Rose Mallow Property.[58] Based on the totality of the circumstances, the Bankruptcy Court concluded Appellant acted with intent to hinder or delay creditors within the meaning of § 522(o).

### b. Appellant's Arguments

Appellant argues the Bankruptcy Court made multiple erroneous factual findings. Appellant contends the Bankruptcy Court erred in finding he acted with the intent to hinder, delay, or defraud creditors.[59] He argues the Bankruptcy Court relied on circumstantial evidence and gave undue weight to the so-called badges of fraud.[60] He maintains the ownership structure with Charles (wherein Appellant owned 1% and Charles owned 99%) reflected a longstanding personal arrangement, not an effort to mislead creditors.[61]

Appellant further asserts the Bankruptcy Court mischaracterized his insolvency claiming his remarks referred to a business entity—not his personal finances.[62] He also challenges the Bankruptcy Court's adverse credibility determinations arguing it wrongly discounted his expert, Wickstrom, and erred in crediting George's tracing analysis, which he contends was incomplete.[63]

---

[58] *Id*. at 10, *in* Appellant's Am. App. at 724.
[59] Appellant's Am. Opening Br. at 21.
[60] *Id*. at 23.
[61] *See Tr*. at 29:9–16 in Appellant's Am. App. at 550; *cf.* Order at 4 in Appellant's Am. App. at 718 (finding Appellant's testimony inconsistent and not credible).
[62] Appellant's Am. Opening Br. at 27.
[63] *Id*. at 29-30.

13

Appellant also maintains he "did not take the funds in dispute and funnel them into an existing mortgage for the purpose of concealing them,"[64] and that prebankruptcy exemption planning does not, on its own, establish the fraudulent intent required under § 522(o)—there must be evidence of extrinsic fraud.[65]

### c. Analysis

First, Appellant's assertion the Bankruptcy Court erred in finding intent to hinder, delay, or defraud creditors under § 522(o) is unpersuasive. Appellant relies on cases such as *Addison*, *Sholdan*, and *Hanson* to suggest that exemption planning alone is not sufficient to establish fraudulent intent. But the Bankruptcy Court did not base its ruling solely on exemption planning. Rather, it conducted a detailed, fact-specific analysis of multiple badges of fraud, each grounded in the evidentiary record.[66]

---

[64] *Id.* at 19.

[65] Appellant relies on the following three cases for this proposition: *In re Sholdan*, 217 F.3d 1006, 1010–11 (8th Cir. 2000) (affirming denial of homestead exemption where debtor liquidated nearly all nonexempt assets and purchased a new house shortly before filing; holding there was ample extrinsic evidence of fraudulent intent and distinguishing permissible conversion from acquiring a house "for no other reason than to defraud creditors"); *In re Addison*, 540 F.3d 805, 811–17 (8th Cir. 2008) (discussing application of fraud under § 522(o) in the context of mortgage paydown and Roth IRA contributions, but reversing reduction of homestead exemption based on extrinsic evidence of fraud); and *In re Hanson*, 848 F.2d 866, 868–70 (8th Cir. 1988) (affirming allowance of exemptions where debtors sold property to family members for fair market value and used proceeds to buy life insurance and prepay homestead mortgage before filing bankruptcy; holding that "mere conversion of nonexempt property to exempt property, without more, will not deprive the debtor of the exemption" and that sale to family members, standing alone, was not extrinsic evidence of fraud). These cases undermine Appellant's position rather than support it.

[66] Order at 12–14, in Appellant's Am. App. at 726–28. At oral argument, Appellant suggested the Bankruptcy Court's ruling was inconsistent with 11 U.S.C. § 522(p). Section 522(p) imposes a statutory limit on the value of a debtor's homestead exemption when the debtor acquired the interest in the property within 1,215 days prior

14

Next, it does not appear the Bankruptcy Court erred in finding Appellant was the true source of the $309,095.34 used to purchase the Rose Mallow Property. The Bankruptcy Court credited the testimony of Appellees' expert, Jeffrey George, who traced all four down payment transactions—$20,000 on January 27, 2021; $80,000 on June 23, 2021; $20,000 on July 14, 2021; and $189,095.34 on February 16, 2022—to funds originating from Appellant's business or personal accounts.[67] The Bankruptcy Court found this tracing persuasive and matched several transactions in both amount and timing to corresponding deposits into the accounts.[68] In contrast, Appellant's expert, Wickstrom, reviewed bank statements but did not ascertain the source of deposits into the

---

to the date of the bankruptcy petition. See 11 U.S.C. § 522(p)(1). If applicable, the provision caps the allowable homestead exemption at a fixed dollar amount—currently $189,050. *In re Willcut*, 472 B.R. 88, 92–93 (10th Cir. BAP 2012). Section 522(p) applies only to property acquired within the 1,215-day period and is triggered automatically upon those facts. It is designed to prevent debtors from converting non-exempt assets into homestead equity, regardless of the debtor's intent, and operates as a bright-line temporal restriction in jurisdictions that opt out of the federal exemption scheme. See 11 U.S.C. § 522(b)(3)(A); *In re Greene*, 583 F.3d 614, 624–25 (9th Cir. 2009) (holding that the § 522(p) cap applies only when a debtor acquires title to property within 1,215 days of filing; a homestead declaration filed within that period is a classification, not the acquisition of an interest, and therefore does not trigger the cap). Although § 522(p) was cited in Appellant's opening brief, Appellant did not develop the argument as an independent basis for reversal and thus forfeited the argument. See *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are . . . inadequately presented, in an appellant's opening brief."). Even if we were to consider this argument, the Bankruptcy Court made no findings under § 522(p), and the homestead exemption claimed did not exceed the statutory cap. Accordingly, § 522(p) was not triggered. The Bankruptcy Court reduced the exemption under § 522(o), which targets fraudulent conversions regardless of the exemption amount, and § 522(p) does not preclude such a ruling.

[67] Order at 10–11, *in* Appellant's Am. App. at 724–25.

[68] *Id*.

accounts.[69] The Bankruptcy Court reasonably concluded that Wickstrom's opinion lacked weight, particularly given his lack of forensic credentials and the presence of conflicting documentation. The Bankruptcy Court also rejected Appellant's assertion the $189,095.34 wire transfer was merely a temporary reimbursement.[70] It found no supporting evidence for that claim and emphasized the inconsistency between Appellant's testimony and a signed gift letter submitted to the lender, in which Charles stated the funds were a gift to Appellant.[71]

Additionally, the Bankruptcy Court did not err in finding Appellant was insolvent. Appellant testified that CMR Holdings was insolvent at the time of the transfers, and the Bankruptcy Court reasonably treated this testimony, when considered with the overall record, as evidence of Appellant's own insolvency.[72] CMR Holdings, a closely held entity owned 99% by Appellant's spouse and 1% by Appellant, held the other real estate assets in question.[73] The Bankruptcy Court's finding was further supported by Appellant's own schedules and the allowance of claims in the bankruptcy case totaling over $1.1 million.

---

[69] *Id*. at 4, *in* Appellant's Am. App. at 718 (finding Wickstrom's testimony "not particularly useful" because he failed to trace the sources of deposits).

[70] *Id.* at 11–12, *in* Appellant's Am. App. at 725–26.

[71] *Id.* at 11, *in* Appellant's Am. App. at 725.

[72] *Tr*. 30:12–31:9, *in* Appellant's Am. App. at 551–52. *See also* Order at 14, *in* Appellant's Am. App. at 728 ("At the time of the transfer, the Debtor admitted he was not solvent, and, in fact, the Debtor became insolvent after the transfer of his ownership interest in the Rose Mallow Property to Charles.").

[73] Order at 3, *in* Appellant's Am. App. at 717.

Appellant's argument the Bankruptcy Court conflated combativeness with untruthfulness is also not persuasive. The Bankruptcy Court's adverse credibility determinations are also entitled to deference. It found Appellant's testimony "inconsistent, at times evasive, and generally, not credible,"[74] and determined that Charles's remote testimony was combative and uncooperative. The Bankruptcy Court reasonably concluded Appellant and Charles's statements were contradicted by the documentary record, including bank records and the gift letter. The Bankruptcy Court is in the best position to assess witness credibility and the weight to be given their testimony having observed demeanor while testifying and consistency throughout the proceedings.[75]

Although Appellant argues the evidence supports different factual inferences, the clearly erroneous standard does not permit an appellate court to substitute its own judgment. Where two permissible views of the evidence exist, the trial court's choice between them must stand.[76] The Bankruptcy Court's findings are well supported by the record and "plausible in light of the record viewed in its entirety."[77] Furthermore, the

---

[74] *Id.* at 4, *in* Appellant's Am. App. at 718.

[75] *See United States v. Carr*, 80 F.3d 413, 418 (10th Cir. 1996) (emphasizing that trial courts are "in a superior position to judge the witnesses' credibility and the weight to be given their testimony.").

[76] S*ee Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949); *In re Johnson*, 477 B.R. 156, 168 (10th Cir. BAP 2012) (explaining the standard for clear error).

[77] *United States v. Robinson*, 146 F. App'x. 255, 260 (10th Cir. 2005) (unpublished) (quoting *Anderson*, 470 U.S. at 574).

record does not support a definite and firm conviction that mistakes have been made. Thus, Appellant has not demonstrated any of the Bankruptcy Court's factual findings were clearly erroneous.

### C. The Bankruptcy Court Properly Interpreted and Applied § 522(o).

The Bankruptcy Court acknowledged § 522(o) serves as a statutory exception to the general rule that exemptions are not subject to surcharge for debtor misconduct.[78] Specifically, the Bankruptcy Court concluded that "§ 522(o) is a specific statute which measures whether an exemption can be claimed by a debtor and allowed by the court if a debtor converts non-exempt property into exempt property with the intent to hinder, delay, or defraud creditors."[79] Appellant argues the Bankruptcy Court misinterpreted § 522(o) by applying it to the acquisition of "title" in a new homestead, rather than limiting it to situations where a debtor enhances equity in an already-owned home.[80] According to Appellant, the statute addresses only the "value of an interest," not the act of acquiring property.[81] Thus, he claims § 522(o) does not apply to a down payment or purchase of a new residence, even if the funds used were nonexempt and the purchase was made with fraudulent intent.[82]

---

[78] Order at 8 (citing *Law v. Siegel*, 571 U.S. 415 (2014)), *in* Appellant's Am. App. at 722.

[79] *Id*. at 8–9, *in* Appellant's Am. App. at 722–23.

[80] Appellant's Am. Opening Br. at 8, 17, 20.

[81] *Id*. at 17.

[82] Appellant's Am. Opening Br. at 17, 19 (arguing that § 522(o) "limits the increase of 'value' prior to filing" and "does not deal with the acquisition of a new home that is, acquisition of 'title,'" and further asserting that Appellant "used the funds in

But this interpretation finds no support in the statute's text or purpose. Section 522(o) provides that "the value of an interest" in real or personal property claimed as a homestead "shall be reduced to the extent that such value is attributable to" the conversion of nonexempt property made with the intent to hinder, delay, or defraud creditors within ten years before filing bankruptcy.[83] The statute does not limit its application to increases in value from mortgage paydowns or improvements to an existing home. Rather, it targets any transaction that converts nonexempt assets into exempt homestead value—whether through increasing equity in a new home, acquiring a new property, or otherwise.[84]

The Court's decision in *In re Willcut* supports this interpretation. There, the court interpreted the phrase "value of an interest" to mean a debtor's "economic equity" in real property and emphasized that § 522(o) applies when that equity is "attributable" to a fraudulent conversion of nonexempt assets.[85] While the facts in *Willcut* involved an existing home, nothing in the decision limits § 522(o)'s reach to only that context. Instead, the Court made clear "[t]he subsection refers to 'the value of an interest,' which

dispute to purchase a home" rather than "funnel them into an existing mortgage for the purpose of concealing them").

[83] 11 U.S.C. § 522(o)(4) (providing for reduction of homestead exemption where "value is attributable to the conversion of nonexempt property" made with intent to hinder, delay, or defraud creditors within ten years before filing).

[84] *See In re Willcut*, 472 B.R. 88, 93 (10th Cir. BAP 2012) ("The subsection refers to 'the value of an interest,' which implies a monetary interest—equity, not title."); *id.* at 94 (Section 522(o) "was enacted to prevent the fraudulent attempt to build up equity in a homestead" explaining that § 522(o) was enacted to prevent debtors from converting nonexempt assets into exempt homestead equity.)

[85] *Id*. at 97–98.

implies a monetary interest—equity, not title."[86] Thus, the purchase of a new home with nonexempt funds immediately creates equity subject to reduction under § 522(o) if done with fraudulent intent.[87]

Congress's purpose in enacting § 522(o) also undercuts Appellant's argument. Although often referred to as addressing the "mansion loophole," the statute's application is not limited to mansions. Rather, § 522(o) was enacted to prevent debtors—particularly in states with unlimited or generous homestead exemptions—from converting nonexempt assets into exempt homestead equity before filing bankruptcy.[88] Courts have held that § 522(o) applies regardless of whether the property is newly acquired or preexisting, and regardless of its value, so long as the equity is attributable to a fraudulent conversion of nonexempt assets.[89] Interpreting § 522(o) as inapplicable to newly acquired homes would revive the very abuse the statute was intended to prevent—permitting debtors to shield

---

[86] *Id*. at 95.

[87] *See Order Denying Motion for Reconsideration of Order* at 3–4, *in* Appellant's App. at 748–49 (Bankruptcy Court rejecting Appellant's argument that § 522(o) is limited to improvements on existing homesteads and applying it to equity resulting from purchase of new property).

[88] *See* H.R. Rep. No. 109-31, pt. 1, at 15-16 (2005) (noting that § 522(o) was added to close the so called "mansion loophole" by requiring reduction of a homestead exemption to the extent its value is attributable to the fraudulent conversion of nonexempt assets within ten years of filing); *In re Willcut*, 472 B.R. at 94 (noting both § 522(o) and § 522(p) were enacted to close the "mansion loophole").

[89] *See In re Presto*, 376 B.R. 554, 572 (Bankr. S.D. Tex. 2007) ("The scope of the statute is limited to the value in a debtor's homestead that is 'attributable' to nonexempt property that was fraudulently converted into equity in the homestead."); *In re Agnew*, 355 B.R. 276, 278–82, 284–85 (Bankr. D. Kan. 2006) (applying § 522(o) where debtors used nonexempt assets to acquire a new homestead).

assets simply by purchasing a new property rather than improving an existing one. Courts

have rejected such formalistic distinctions in favor of a substance-over-form approach.[90]

In sum, Appellant's reading of § 522(o) is contrary to the statute's plain text,

undermines its purpose, and is unsupported by precedent. The Bankruptcy Court

correctly rejected Appellant's title-based distinction and applied § 522(o) to reduce the

homestead exemption based on its finding that Appellant used nonexempt funds to

acquire equity in a new home with intent to hinder or delay creditors.

### D. The Bankruptcy Court Correctly Applied the Burden of Proof.

At the evidentiary hearing, the Bankruptcy Court stated:

> [T]he debtor has the burden of proof on the motion to abandon and also, as
> cited in the judgment creditor's brief, the burden of persuasion on the right
> to an exemption. So, I think this is really the debtor's presentation.[91]

In its Order, the Bankruptcy Court correctly noted that under Rule 4003(c), the party

objecting to an exemption bears the initial burden of proving that the exemption is not

properly claimed. The Bankruptcy Court further explained that if the objecting party

comes forward with evidence sufficient to rebut the presumptive validity of the

---

[90] *See Presto*, 376 B.R. at 568; *See In re Sholdan*, 217 F.3d 1006, 1011 (8th Cir. 2000) (affirming denial of homestead exemption where debtor liquidated nonexempt assets and purchased new home in contemplation of bankruptcy with intent to defraud creditors).

[91] *Tr.* at 12:6–9, *in* Appellant's Am. App. at 270. As to the Appellees' Objection to the claimed Exemptions, the Order also provided, ". . . the objecting party has the initial burden of proving the exemptions are not properly claimed. If the objecting party produces evidence sufficient to rebut the exemption, the burden shifts to the Debtor to produce evidence demonstrating that the exemption is proper, but the burden of persuasion remains with the objecting party." Order at 5–6, *in* Appellant's Am. App. at 719–20.

21

exemption, the burden of production shifts to the debtor to support the exemption.[92]

However, the burden of persuasion remains with the objecting party throughout. Finally,

the Bankruptcy Court determined that parties "seeking to reduce the exemption amount

[pursuant to § 522(o)] bear the burden of proof."[93]

Appellant contends the Bankruptcy Court erroneously shifted the burden of proof

during the evidentiary hearing and thus prejudiced him. While the Bankruptcy Court

incorrectly stated the burden of proof at the hearing, it does not constitute reversible

error. In the Order, the Bankruptcy Court accurately articulated the governing burden of

proof standard under Rule 4003(c), which provides: "In a hearing under this Rule 4003,

the objecting party has the burden of proving that an exemption was not properly

claimed."[94] Additionally, under this rule, once the objecting party introduces evidence

sufficient to rebut the presumed validity of the exemption, the burden of production shifts

to the debtor, but the burden of persuasion remains with the objector. This standard is

well established in the Tenth Circuit.[95]

Moreover, the Bankruptcy Court's detailed analysis throughout the Order reflects

a correct understanding and application of this burden-shifting framework. The

---

[92] Order at 5–6, *in* Appellant's Am. App. at 719–20.

[93] *Id*. at 9, *in* Appellant's Am. App. at 723.

[94] Fed. R. Bankr. P. 4003(c).

[95] *See, e.g.*, *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005) (addressing the Kansas homestead exemption and concluding the "objecting party bears the burden of proof on an objection to a claimed exemption" by a "preponderance of the evidence"); *In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003) ("Once a debtor claims an exemption, the objecting party bears the burden of proving the exemption is not properly claimed.").

Bankruptcy Court expressly stated, "[t]he Judgment Creditors, seeking to reduce the exemption amount, bear the burden of proof," and identified the standard of proof as a preponderance of the evidence.[96] It then proceeded through a detailed analysis evaluating whether the objecting parties rebutted the exemption, whether Appellant presented responsive evidence, and whether the objectors ultimately satisfied their burden of persuasion.[97]

Because the Bankruptcy Court's written ruling correctly stated and applied the governing standard, any earlier misstatement during the hearing was harmless error.[98] Here, the record confirms that the Bankruptcy Court reached its decision through a proper evidentiary framework and without impermissibly shifting the burden to Appellant.

## V. Conclusion

The Bankruptcy Court made no erroneous factual findings and did not err as a matter of law in its interpretation and application of § 522(o). Although the Bankruptcy Court misstated the burden of proof at the evidentiary hearing, such error was harmless as the court correctly articulated and applied the correct standard in its Order when it made its decision. Accordingly, we AFFIRM.

---

[96] Order at 9, *in* Appellant's Am. App. at 723.

[97] *Id*. at 6–14, *in* Appellant's Am. App. at 720–28.

[98] *United States v. Collins*, 575 F.3d 1069, 1073 (10th Cir. 2009) ("A harmless error is one that does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect.") (internal citation omitted).